Paul William SCOTT, Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent–Appellee.

No. 88–5536.

United States Court of Appeals, Eleventh Circuit.

Dec. 14, 1989.

Paul Morris, Coral Gables, Fla., for petitioner-appellant.

Jim Smith, Atty. Gen., Lee Rosenthal, Richard G. Bartmon, James J. Carney, Asst. Attys. Gen., West Palm Beach, Fla., for respondent-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

We affirm the district court rulings in this capital case.

## FACTS

On December 4, 1978, between 7 and 10 p.m., appellant, Paul William Scott, Charles Soutullo, and Richard Kondian, engaged in a conversation that Soutullo's girlfriend (Felicia) could not hear. According to Soutullo, the appellant and Kondian asked him to join them in robbing Jim Alessi and killing him by injecting battery acid into his body. Soutullo refused to join and told Felicia about the conversation. Late that evening, Alessi arrived at his father's house to borrow the father's station wagon. Alessi, Kondian, and the appellant then left Alessi's father's house in the station wagon and another vehicle.

The next morning, Palm Beach County, Florida, law enforcement officers found Alessi's nude body in his living room amidst a large amount of blood and disarranged furniture. The officers found Alessi's feet and hands bound with electrical and telephone cords. A teddy bear statue was broken and scattered near Alessi's feet. The officers also found the appellant's fingerprints in the kitchen, on an ashtray in the family room, on the cover of a book in the living room, and on the bloodstained tip of a knife. Articles in the house indicated that a violent struggle had taken place moving from room to room. Alessi's death resulted from several blows to the head by a blunt instrument. Examination revealed that Alessi's hands and feet had been tied while he was still alive, causing swelling. Following Alessi's murder, the appellant and Kondian stole Alessi's automobile and stole jewelry from Alessi's flower and jew-

elry store in another part of the city. On December 7, 1978, Soutullo told law enforcement officers about the conversation with the appellant and Kondian regarding the robbery plans. On January 4, 1979, law enforcement officers arrested the appellant in California. Following the arrest, law enforcement officers seized a golden bear charm from the appellant's room.

## PROCEDURAL HISTORY

A jury convicted the appellant of murder after the state trial court instructed them on premeditated and felony murder theories. In accordance with the jury's recommendation, the trial court imposed the death sentence. On automatic appeal, the Supreme Court of Florida affirmed the conviction and the judgment. *Scott v. State,* 411 So.2d 866 (Fla.1982). That court also affirmed the denial of all relief in state habeas corpus proceedings. *Scott v. Wainwright,* 433 So.2d 974 (Fla.1983).

The state of Florida scheduled the appellant's execution for June 7, 1983. On June 8, 1983, the United States District Court for the Southern District of Florida stayed the execution and allowed the appellant to file an amended petition. The original and amended petitions for habeas corpus presented thirty-one issues. On January 10, the district court stayed all proceedings and allowed the appellant to file claims in state court for exhaustion purposes. The district court indicated explicitly that the appellant should present to the state courts all claims that he would later present to the federal courts. When the appellant presented his claims to the state circuit court, the circuit court denied all relief, and the Supreme Court of Florida affirmed. *Scott v. State,* 513 So.2d 653 (Fla.1987). Following the denial of all claims in the state court system, the appellant returned for a final disposition of his claims in the district court. On May 26, 1988, the district court rejected all of the appellant's claims. *Scott v. Dugger,* 686 F.Supp. 1488 (S.D.Fla.1988).

## CONTENTIONS OF THE PARTIES

The appellant contends that his lawyer rendered ineffective assistance at the guilt and penalty phases of the trial, that his jury was not selected from a cross-section of the community, that the state's evidence was insufficient to prove felony murder, that the trial court improperly excluded relevant mitigating evidence, that the instructions to the jury improperly described the role of the jury in the sentencing process, and that the Florida aggravating circumstance of "especially heinous, atrocious, or cruel" is unconstitutional.

The state contends that no error was committed during the course of the trial, that one of appellant's claims is barred, and that the Florida aggravating circumstance of "especially heinous, atrocious, or cruel" has been so limited by the Florida Supreme Court as to render it constitutional.

## ISSUES

We discuss the issues below, in the order listed:

1. Whether the appellant's sixth amendment right to effective assistance of counsel was violated at the guilt phase of his trial;

2. whether appellant's sixth and fourteenth amendment rights to a jury selected from a cross-section of the community was violated;

3. whether the evidence was sufficient to support a conviction for felony murder;

4. whether appellant's sixth amendment right to effective assistance of counsel was violated by his lawyer's failure to present mitigating evidence at the penalty phase of his trial;

5. whether the trial court violated appellant's eighth and fourteenth amendment rights by excluding relevant mitigating evidence;

6. whether the district court erred in denying appellant the right to amend his petition; and

7. whether Florida's aggravating circumstance of "especially heinous, atrocious, or cruel" is unconstitutional.

## DISCUSSION

### 1. Ineffective Assistance of Counsel at the Guilt Phase

The standard for judging an ineffective assistance of counsel claim is found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland's* two-part test, the criminal defendant must first show that his lawyer's performance was so deficient that the lawyer was not functioning as the counsel guaranteed by the sixth amendment. The second part of *Strickland's* test is often called the "prejudice" prong and requires the defendant to show a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland* at 694, 104 S.Ct. at 2068. *See Harrison v. Jones*, 880 F.2d 1279, 1281 (11th Cir.); *Bennett v. Fortner*, 863 F.2d 804, 809 (11th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989).

Appellant bases his ineffective assistance of counsel claim on his lawyer's failure to investigate and present evidence regarding the theory that the appellant was not present in Alessi's home at the time of the murder. Appellant also asserts that his counsel failed to cross-examine the state medical examiner, and that his counsel failed to present evidence to impeach Soutullo.

### a. The Defense of Another Theory

■ Appellant's counsel did not render ineffective assistance by failing to present the theory that appellant was not in Alessi's home at the time of the murder. The Supreme Court of Florida considered appellant's clemency testimony on this issue. In the clemency hearing, appellant testified that Kondian deliberately engaged in sex with Alessi so that appellant could rummage through the house for things to steal. Appellant now argues, however, that his lawyer should have presented a "defense of others" theory. Such a defense would contradict appellant's clemency testimony and present a theory that Alessi attempted to rape Kondian and that appellant came to Kondian's aid. The defense theory would also assert that, after successfully interrupting the rape attempt, appellant left the house while Alessi was still alive. Obviously, appellant's clemency hearing testimony proved such a defense false. Thus, appellant's lawyer could not have rendered ineffective assistance by failing or refusing to present a false defense. The district court so found, and we agree.

Additionally, the idea for this defense came from Kondian's statement to the Rhode Island police when they arrested him. On that occasion, Kondian stated that he and appellant were at Alessi's house in connection with a drug transaction, and that Alessi tried to rape him. While Kondian and Alessi fought, Kondian stated, appellant joined the fight and hit Alessi repeatedly.

Further, appellant's lawyer would have faced two monumental problems in presenting such a defense. First, the Supreme Court of Florida found, and we agree, that Kondian's testimony was unavailable. Kondian was awaiting trial for Alessi's murder at the time of appellant's trial. Kondian's lawyer testified at the evidentiary hearing in the state court that he would not have allowed Kondian to testify as to any of the facts of the murder *in any manner*. Second, Kondian told the Rhode Island police that appellant had beaten Alessi with his (Kondian's) role in the fight being minimal. Hence, the "defense of another" defense was not available. Even if Kondian's testimony had been available, the physical evidence refuted such a theory: the physical evidence indicated that Alessi had been beaten after being tied with the cords.

### b. Failure to Cross–Examine Medical Examiner

Appellant also asserts ineffective assistance of counsel because his lawyer failed to cross-examine the state medical examiner regarding sperm found on Alessi's body. According to appellant, his trial counsel should have cross-examined the medical examiner on the theory that sperm found on Alessi's body was from recent sexual activity. Therefore, according to appellant, this

testimony would support a theory that he responded to Alessi's attempted rape of Kondian. Appellant's clemency testimony, however, indicates that Kondian voluntarily engaged in sex with Alessi. Consequently, appellant's lawyer could not have rendered ineffective assistance by failing or refusing to present a completely false defense.

### c. Failure to Present Impeaching Evidence

■ Finally, appellant presents as his last guilt phase ineffective assistance of counsel claim the theory that his lawyer improperly failed to present evidence to impeach Soutullo. To refute this claim, the state argues that, although appellant's counsel presented no witnesses to impeach Soutullo, the jury was well aware of impeaching evidence against Soutullo. Without question, Soutullo was the state's key witness. Soutullo testified that Kondian and appellant discussed their plan to rob and murder Alessi.

In rejecting this claim, the Supreme Court of Florida concluded that the jury was adequately aware of Soutullo's reputation for dishonesty and his criminal background. We agree. At the trial, through Soutullo's testimony, the jury learned that Kondian and Soutullo used unlawful drugs on the date of the conversation regarding the murder. The jury also learned that when first questioned regarding Alessi's murder, Soutullo lied about the fact that he knew Kondian's accomplice (appellant). The jury also learned through Soutullo's testimony, that he had been arrested after Alessi's murder for five other felonies, convicted of grand larceny in California, and that a warrant for his arrest was outstanding at the time of Alessi's murder. It is difficult to imagine what else the jury would have learned through Soutullo's cross-examination. We reject appellant's claims of ineffective assistance of counsel at the guilt phase of the trial.

### 2. Jury Cross–Section

■ Appellant claims that the state court violated his sixth and fourteenth

amendment rights by denying his motion for a one-day continuance because his trial was beginning on the Jewish holiday Yom Kippur. As to this claim, the Supreme Court of Florida found no deliberate or systematic exclusion of prospective Jewish jurors. *Scott*, 411 So.2d at 868.

A deputy clerk testified that she granted five requests from jurors who telephoned her office and asked for postponement of jury service due to the Jewish holiday. This clerk did not know how many other clerk's office personnel granted postponement requests to prospective jurors because of the Jewish holiday. The record does not reflect the religious composition of appellant's jury. In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court held that an essential component of the sixth amendment right to a jury trial is a trial jury drawn from a representative cross-section of the community. A sixth amendment violation occurs where the claimant can show (1) that the alleged excluded group is distinctive in the community, (2) that the group was not fairly and reasonably represented, and (3) that the underrepresentation resulted from systematic exclusion. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). We are bound by *Grech v. Wainwright*, 492 F.2d 747 (5th Cir.1974), which upheld a district court's discretion to exclude Jewish jurors on Yom Kippur in the face of a sixth amendment challenge. Even if we were not so bound, we would nevertheless hold appellant's claim meritless because the appellant has failed to show that his jury pool was in fact defective. The record does not show that Jewish persons were underrepresented; consequently, we reject appellant's claim that he lacked a cross-section of the community.[1]

### 3. Insufficient Evidence for Felony Murder

■ The appellant claims that the state presented insufficient evidence to show a

---

**1.** As to this issue, the trial court believed that the appellant could not prevail without being

Jewish. We agree with the district court that this erroneous belief was harmless.

connection between Alessi's murder and any felony. Appellant argues that, at best, the state's evidence shows that the burglary of the flower and jewelry store occurred after the murder, and that the two events were completely unrelated. Therefore, he argues, the murder was not committed by one engaged in the perpetration of a felony. We consider this claim under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* provides that we must conduct a review of the record in the light most favorable to the prosecution and determine whether a rational fact finder could have found the accused guilty beyond a reasonable doubt. *See Redman v. Dugger*, 866 F.2d 387, 389 (11th Cir. 1989); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1574 (11th Cir.1988).

The district court rejected this claim based on the testimony of Nancy Flair (one of Alessi's business associates) and on admissions the appellant made in his sworn testimony to the Florida Probation and Parole Commission. Flair testified that on the Saturday before his murder, Alessi wore a golden teddy bear charm. Following appellant's arrest, the police found a golden teddy bear charm in appellant's motel room. The testimony before the Florida Probation and Parole Commission indicates that appellant agreed to accompany Kondian with the understanding that a larceny would occur while Kondian engaged in sex with Alessi. A ring was missing from Alessi's hand. Consequently, Flair's testimony about the golden teddy bear, the miss-

ing ring, and the discovery of a golden teddy bear in appellant's possession, adequately supports a felony-murder conviction.

### 4. *Failure to Offer Mitigating Evidence at the Penalty Phase*

■ Appellant's assertion that his lawyer failed to offer mitigating evidence proceeds on two theories. The first is that his lawyer should have presented as a mitigating factor the theory that appellant sought to prevent Alessi's rape of Kondian. As discussed earlier in this opinion, such a theory would have been completely false. Consequently, we reject this theory.

Appellant's second assertion is that his counsel failed to present in the penalty phase appellant's theory that he saved a guard's life while in prison. Although the asserted incident was considered, the evidence falls far short of indicating that appellant saved a prison guard's life. Appellant's lawyer elicited testimony from Dr. Brad Fisher which indicated that appellant was not charged with escape because he convinced prison authorities that he was late returning to the prison following a furlough because he had broken a promise to two other inmates that he would bring a firearm into the prison. This testimony offered to support this theory falls far short of showing the appellant saved a prison guard's life.[2] Appellant's lawyer, therefore, cannot be guilty of ineffective assistance for failing to present the theory in mitigation. We reject the theories and

---

2. The state presents the testimony as follows:
BY MR. BARRS:
Q  What was the outcome of the warden's investigation of this escape—the allegation?
A  Essentially, what he wrote was that part of two of the other people at the Preston Industrial School that he would bring back a weapon. He was not going to bring back a weapon; therefore, he was in a bad position because if he didn't bring it back, then he was not willing to bring it back. But if he did not, then he was in trouble with those two who had that expectation of him to bring it back. This was a legitimate furlough he had been granted on the basis of his behavior. So that he did not bring it back and came back later and at that point, his story reflecting what I just said was scrutinized by the warden; he was subject-

ed I forgot at what point, a week or so later—to a lie detector test which—
Q  They submitted Paul to a lie detector Test?
A  Exactly. And he passed. In other words, he was saying that, "These two people expected me to bring this gun back and I wasn't ready to bring it back, and I was scared to go back," a totally understandable sort of situation if you work with adolescents and delinquents. And he was subjected to the lie detector test to see whether it was true or not, and he passed the lie detector test.
Q  And was any disciplinary action taken against him because of that escape?
A  No, no at—no.
Appellee's brief at 9–10 (quoting trial transcript at 1592–94).

the claim of failure to present mitigating evidence.

### 5. *Exclusion of Journalist's Testimony*

■ Appellant asserts that the trial court violated his eighth amendment right to present evidence in mitigation of the death sentence by excluding the testimony of Don Reid, a journalist, who has written extensively regarding his death penalty experiences and is a support of organizations opposed to the death penalty. Appellant correctly asserts that in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court held that the sentencer in a capital case must be allowed to consider as a mitigating factor evidence of a defendant's character, or record, and any of the offense's circumstances. The state, however, correctly points out that the Supreme Court noted: "Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his office." 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12. Our review of the record indicates that Reid's testimony was not related to appellant's character, prior record, or the circumstances of his offense. The district court did not err by excluding Reid's testimony. *See Shriner v. Wainwright,* 715 F.2d 1452, 1456 (11th Cir.1983) (excluding testimony of minister who witnessed three electrocutions), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984). *See also Martin v. Wainwright,* 770 F.2d 918, 935–37 (11th Cir.1985) (excluding testimony of law professor about deterrent effect of death penalty), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *Young v. Zant,* 727 F.2d 1489, 1493 (11th Cir.) (excluding testimony of psychiatrist about type of rehabilitative program he would recommend), *cert. denied,* 470 U.S. 1009, 105 S.Ct. 1371, 84 L.Ed.2d 390 (1984).

This case is also distinguishable from *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). In *Skipper,* the Supreme Court reasoned that consideration of a defendant's past conduct is indicative of his probable future behavior; therefore, evidence indicating probable future behavior may be considered in criminal sentencing. In this case, Reid's testimony did not address the appellant's past conduct nor did it seek to indicate his future behavior. Accordingly, we reject this claim.

### 6. *Denial of Leave to Amend*

■ Appellant contends that the district court erred by denying him leave to amend his petition with a claim pursuant to *Adams v. Wainwright,* 804 F.2d 1526 (11th Cir.1986), *modified,* 816 F.2d 1493 (11th Cir.1987), *cert. granted sub nom., Dugger v. Adams,* 485 U.S. 933, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988). This claim has been resolved against the appellant by the Supreme Court's decision in *Dugger v. Adams,* —— U.S. ——, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). In *Adams,* the Supreme Court held that the failure to raise a claim of diminished importance of a jury's role in sentencing at trial or on direct appeal results in a procedural bar. In this case, appellant failed to raise this claim at trial or on direct appeal. Accordingly, we reject this claim.

### 7. *Whether the Standard "Especially Heinous, Atrocious, or Cruel" is Unconstitutional*

Appellant relies on *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1980), to argue that, like the Oklahoma version of the especially heinous, atrocious and cruel aggravating capital sentencing factor, the Florida factor has not been limited sufficiently to pass constitutional scrutiny. We previously rejected an identical claim in *Harich v. Wainwright,* 813 F.2d 1082, 1104 (11th Cir.1987), *adopted on this point, Harich v. Dugger,* 844 F.2d 1464, 1468–69 (11th Cir.1988) (in banc). Accordingly, we reject this claim.

### CONCLUSION

Finding no error in the district court's determination of the issues, we affirm.

AFFIRMED.