**Paul William SCOTT, Petitioner–
Appellant,**

v.

**Harry K. SINGLETARY, Jr., Secretary,
Florida Department of Corrections,
Respondent–Appellee.**

**Nos. 88–5536, 94–5171.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 14, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 17, 1994.

**1548**

Martin J. McClain, Office of the Capital Collateral Representative, Tallahassee, FL, for appellant.

Consiglia Ann Terenzio, Asst. Atty. Gen., West Palm Beach, FL, for appellee.

Before HATCHETT, ANDERSON and DUBINA, Circuit Judges.

HATCHETT, Circuit Judge:

Petitioner, Paul William Scott, filed a motion requesting a stay of his execution and, pursuant to Eleventh Circuit Rule 41–1, a recall of the mandate issued in *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 224, 112

L.Ed.2d 179 (1990), in which this court affirmed the district court's denial of his Petition for Writ of Habeas Corpus. Scott also filed a motion in the United States District Court for the Southern District of Florida, pursuant to Fed.R.Civ.P. 60(b)(6), seeking relief from that court's 1988 denial of his Petition for Writ of Habeas Corpus. Following the district court's denial of the Rule 60(b)(6) motion, Scott appealed to this court. We construe Scott's Rule 60(b)(6) motion to be in the order of a petition for writ of habeas corpus. For the reasons that follow, we affirm the district court's denial of Scott's Rule 60(b)(6) motion, decline to recall the mandate, deny the petition for certificate of probable cause, and deny the request for a stay of execution.

## PROCEDURAL HISTORY

Scott is under sentence of death for the December 1978 murder of James Alessi.[1] The jury recommended the death penalty and, in accordance with that recommendation, the trial court sentenced Scott to death on December 14, 1979.

On appeal to the Supreme Court of Florida, Scott challenged his convictions and sentence on several grounds. One of the claims attacked the constitutionality of Florida's death penalty statute. None of his claims, however, challenged his specific "heinous, atrocious, or cruel" (HAC) aggravating circumstance instruction. The Supreme Court of Florida rejected all of Scott's claims and affirmed his convictions and sentence. *Scott v. State*, 411 So.2d 866 (Fla.1982). After exhausting his direct appeals, Scott filed a state habeas corpus petition, an application for leave to file a petition for writ of error coram nobis, and a motion for stay of execution. None of these claims attacked the HAC instruction given at his sentencing proceeding. The Supreme Court of Florida denied all of Scott's motions. *Scott v. Wainwright*, 433 So.2d 974 (Fla.1983).

The state of Florida scheduled Scott's execution for June 7, 1983. On May 27, 1983,

Scott filed a petition for writ of habeas corpus in federal district court. The district court stayed Scott's execution and allowed him to file an amended petition. On June 8, 1983, Scott amended his petition; his petition contained 29 assignments of error. On January 10, 1984, the district court stayed all proceedings and allowed Scott to file his unexhausted claims in state court. Again, none of these claims attacked his trial court's HAC instruction. The Supreme Court of Florida once again denied Scott state habeas corpus relief. *Scott v. State*, 513 So.2d 653 (Fla.1987).

Scott then returned to federal district court for a final disposition of his claims. He added two more claims to his habeas corpus petition, bringing his total assignments of error to 31.[2] One of these 31 claims contended that Florida had failed to establish a consistent framework for the application of the HAC aggravating circumstance. None of the claims, however, specifically attacked the HAC instruction given in Scott's case. The district court rejected all of Scott's claims and denied his petition. *Scott v. Dugger*, 686 F.Supp. 1488 (S.D.Fla.1988). On the appeal of the district court's denial of his habeas petition, this court issued an opinion affirming the district court's denial of habeas corpus relief. *Scott v. Dugger*, 891 F.2d 800, 802 (11th Cir.1989). Scott then filed a petition for rehearing, which was denied. *Scott v. Dugger*, 898 F.2d 160 (11th Cir.1990). The United States Supreme Court subsequently denied his petition for writ of *certiorari*. *Scott v. Dugger*, 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990).

On October 19, 1990 the Governor of Florida signed a death warrant setting Scott's execution for the week of October 30. On October 23, 1990 Scott's former counsel withdrew and Florida's Office of the Capital Collateral Representative entered an appearance on his behalf. On October 29, 1990, the Supreme Court of Florida entered a stay to allow Scott's new counsel time to file a state

---

**1.** The facts of the crime are set forth in the district court's denial of his petition for writ of habeas corpus, *Scott v. Dugger*, 686 F.Supp. 1488, 1494–96 (S.D.Fla.1988).

**2.** Scott also sought to return to the Florida courts to exhaust an additional claim, but the district court denied this request.

habeas corpus petition. Scott filed a state habeas petition on December 18, 1990 alleging seven grounds for relief. None of Scott's claims challenged the trial court's HAC instruction. The Florida Supreme Court affirmed the state trial court's denial of relief. *Scott v. Dugger*, 634 So.2d 1062 (Fla.1994).

Following an unsuccessful clemency hearing, the Governor signed a death warrant on September 30, 1994, setting an execution date of November 16, 1994. On October 28, 1994, Scott filed an application for a stay of execution and a motion for relief from judgment, pursuant to Fed.R.Civ.P. 60(b)(6), in federal district court. He alleged that this court's recent decision in *Glock v. Singletary*, 36 F.3d 1014 (11th Cir.1994), constituted intervening new law which demonstrates that our previous decision affirming the district court's denial of his habeas corpus petition was erroneous. On November 2, 1994, while his Rule 60(b) motion was pending in the district court, Scott filed a motion in this court requesting a stay of his execution and, pursuant to Eleventh Circuit Rule 41–1, a recall of the mandate issued in *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989).

■ On November 7, 1994 the district court, rejecting the contention that *Glock* constituted an intervening change in the law which entitled Scott to relief, denied the Rule 60(b)(6) motion and the request for a stay of execution. The district court, apparently treating the Rule 60(b)(6) motion in the nature of a petition for writ of habeas corpus, then granted a certificate of probable cause allowing Scott to appeal its decision to this court. *See* Fed.R.App.P. 22(b); 11th Cir.R. 22–1. The district court, however, subsequently entered an order vacating its earlier order granting a certificate of probable cause. Scott moved to strike this order. This court held oral argument on November 10, 1994.[3]

## CONTENTIONS

The gravamen of Scott's Rule 60(b)(6) motion and his motion to recall the mandate is that our earlier decision in *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989), affirming the district court's denial of his petition for writ of habeas corpus, "erroneously found no merit to [his] claim that [Florida's] 'heinous, atrocious or cruel' aggravating circumstance was applied in an overbroad and vague manner when the penalty phase jury did not receive adequate guidance regarding a narrowing construction."[4] The intervening decision of

---

3. We have serious reservations about the propriety of seeking the same relief in simultaneous motions brought pursuant to Fed.R.Civ.P. 60(b) and 11th Cir.R. 41–1(b). We view both of Scott's motions as essentially in the order of successive petitions for writ of habeas corpus. The propriety of Scott's course of action assumes that jurisdiction of his habeas petition can simultaneously lie in both the district court and this court. We conclude, however, that the district court's denial of the Rule 60(b) motion on November 7, 1994, cured any jurisdictional defect which might have existed when Scott filed the Rule 41–1(b) motion on November 2, 1994, while his Rule 60(b) motion was still pending in the district court. See *Lindsey v. Thigpen*, 875 F.2d 1509, 1512 n. 3 (11th Cir.1989).

Similar procedural machinations will, in the future, be strictly scrutinized for compliance with basic jurisdictional norms.

4. Under Florida law, following a defendant's conviction on a capital murder charge, a phase of the trial is conducted to determine whether the sentence will be life imprisonment or death. Fla.Stat. § 921.141(1). At this penalty phase of trial, the jury returns a recommendation after determining whether certain statutory aggravating circumstances outweigh any mitigating cir-

cumstances found to exist. Based upon this recommendation, the sentencing judge imposes sentence. The "especially heinous, atrocious, or cruel" (HAC) capital felony is one statutory aggravating factor. Fla.Stat. § 921.141(5)(h).

Section 921.141 also provides that the Supreme Court of Florida automatically review all cases in which the sentence of death is imposed. The Supreme Court of Florida's review "guarantees" that the aggravating and mitigating circumstances present in one case "will reach a similar result to that reached under similar circumstances in another case." *State v. Dixon*, 283 So.2d 1, 10 (Fla.1973). Thus, Florida's capital-sentencing scheme is designed to eliminate the arbitrary and capricious application of the death sentence which the Supreme Court proscribed in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

In *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court found Florida's HAC aggravating circumstance was not unconstitutionally vague where the jury was instructed that the HAC circumstance applies only to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Proffitt*, 428 U.S. at 255–56, 96 S.Ct. at 2968 (citing *State v. Dixon*, 283 So.2d 1 (Fla.1973)).

the Eleventh Circuit in *Glock v. Singletary*, 36 F.3d 1014 (11th Cir.1994), demonstrates, according to Scott, that our purported ruling on the "heinous, atrocious or cruel" aggravating (HAC) circumstance "was based upon an error of law."

## DISCUSSION

■ "A mandate once issued shall not be recalled except to prevent injustice." Eleventh Circuit Rule 41–1(b). This court does have the power to recall its mandate if there has been a supervening change in the law. *Judkins v. Beech Aircraft Corp.*, 745 F.2d 1330, 1332 (11th Cir.1984). This change in the law, however, must seriously undermine the correctness of the court's prior judgment. *United States v. Holland*, 1 F.3d 454, 455 (7th Cir.1993).

### A. *Motion to Recall the Mandate*

■ Scott asserts that this court, in its earlier opinion, did not address the claim that *his* sentencing phase jury did not receive an adequate narrowing instruction concerning the HAC aggravating circumstance. If the court had done so, he continues, it would have concluded that his death sentence was based on an unconstitutionally vague jury instruction. Because we believe that an appellate court's failure to reach the merits of a capital defendant's adequately presented, ostensibly meritorious claim would effect a manifest injustice and undermine confidence in the judicial system, our inquiry begins with a review of the nature of Scott's HAC claim in our earlier decision.

Scott framed the issue concerning the HAC circumstance as follows:

WHETHER THE DECISIONS OF THE SUPREME COURT OF FLORIDA INTERPRETING THE AGGRAVATING CIRCUMSTANCE REGARDING CAPITAL FELONIES THAT ARE "ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL" HAVE RENDERED THAT CIRCUMSTANCE UNCONSTITUTIONALLY VAGUE, OVERBROAD, ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.[5]

Thus, in the opinion, this court paraphrased Scott's formulation of the issue in the following manner: "whether Florida's aggravating circumstance of "especially heinous, atrocious, or cruel" is unconstitutional." *Scott v. Dugger*, 891 F.2d at 802. The court devoted a relatively small portion of the opinion to resolving that claim. We stated in pertinent part:

Appellant relies on *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), to argue that, like the Oklahoma version of the especially heinous, atrocious and cruel aggravating capital sentencing factor, the Florida factor has not been limited sufficiently to pass constitutional scrutiny. We previously rejected an identical claim in *Harich v. Wainwright*, 813 F.2d 1082, 1104 (11th Cir. 1987), *adopted on this point, Harich v. Dugger*, 844 F.2d 1464, 1468–69 (11th Cir. 1989) (in banc). Accordingly, we reject this claim.

*Scott v. Dugger*, 891 F.2d at 806 (parallel citations omitted). Thus, the court considered Scott's claim to be an attack on the constitutionality of Florida's HAC aggravating circumstance, and resolved it as such.

In *Harich*, this court rejected a habeas petitioner's contention that "the Florida Supreme Court has 'utterly failed to limit the application of th[e] [HAC] circumstance in any coherent fashion.'" *Harich*, 813 F.2d at 1104 (citing *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)). Conversely, in *Maynard*, the Supreme Court invalidated an Oklahoma death sentence because the petitioner's sentencing-phase jury was only given the statutory HAC instruction without a sufficient limiting instruction. We recognize that a seemingly plausible argument could be made that Scott's "reliance" on *Maynard* provided both the State of Florida and this court with notice that he was

---

**5.** Fed.R.App.P. 28(a)(3) requires that appellate briefs contain a statement of the issues presented for review.

also raising the claim that his sentencing jury received a constitutionally inadequate HAC limiting instruction. But, our review of the context in which Scott relies on *Maynard* convinces us otherwise. Scott's appellate brief demonstrates conclusively that he invoked *Maynard* as an example of where a state's failure to develop a constitutionally adequate limiting instruction caused the Supreme Court to invalidate a death sentence. Thus conceived, the court had little trouble rejecting this argument because, at the time of Scott's sentencing, Florida had already developed a HAC limiting instruction which had passed constitutional muster. *See Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Our extremely thorough review of every aspect of Scott's previous HAC claim leaves us convinced that the essential nature of the claim was that Florida had not devised a "heinous, atrocious, or cruel" limiting instruction which would sufficiently channel, on a consistent basis, the sentencer's discretion so as not to offend the Constitution. *See Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Scott asserted that, in *Proffitt,* the Supreme Court upheld the constitutionality of Florida's HAC aggravating circumstance "based upon the promise made by the Supreme Court of Florida ... that the circumstance would be limited to 'the conscienceless or pitiless crime which is unnecessarily torturous to the victim.' " He concluded that "[t]he time has come to recognize that the review of the HAC circumstance afforded by the Supreme Court of Florida fails to 'genuinely narrow the class of persons eligible for the death penalty.' " His brief makes it abundantly clear that his assignment of error implicated the Supreme Court of Florida's review of the lower courts' application of the HAC aggravating circumstance. We are unable to find anywhere in his brief the assertion that *his* sentencing-phase jury did not receive the full instruction the Supreme Court approved in *Proffitt.*

The following factors reinforce our conclusion that Scott did not adequately present the claim that his sentencing-phase jury received a defective HAC instruction to this court: (1) Scott did not object to the instruction at his sentencing proceeding; [6] (2) he did not offer an alternative instruction at the sentencing proceeding; (3) he did not raise the issue on his direct appeal to the Florida Supreme Court; (4) he did not raise the claim in any of his collateral attacks in state court; (5) he did not raise the claim before the federal district court in his petition for writ of habeas corpus; (6) he, in his Petition for Rehearing *en banc,* did not state that the panel either misunderstood or did not address his claim; [7] (7) finally, and perhaps most damagingly, he did not raise the claim as recently as October 24, 1994, when he filed his Rule 60(b)(6) motion in federal district court seeking relief from that court's 1988 denial of his habeas petition.[8]

We also find support for our conclusion in *Henderson v. Dugger,* 925 F.2d 1309 (11th Cir.1991). In that case, the trial judge gave only the standard statutory construction of the HAC aggravating circumstance. The petitioner's trial counsel objected on the

---

6. Florida requires a contemporaneous objection to jury instructions in order to preserve the issue for appeal. *Castor v. State,* 365 So.2d 701 (Fla. 1978); see also *Sochor v. State,* 580 So.2d 595, 602–03 n. 10 (Fla.1991) (rejecting a capital defendant's contention that the HAC instruction was improper on the grounds that the lack of a contemporaneous objection failed to preserve the issue for appeal).

7. Scott does discuss the HAC instruction his jury received in three sentences in his petition for rehearing. When read in context, however, the three sentences are part of the broader theme of his assignment of error, namely, that the Supreme Court of Florida has neither developed nor consistently applied a HAC limiting instruction to prevent the death penalty from being

imposed in an arbitrary and capricious manner. Moreover, given the significance of the claim, we seriously question whether Scott would present the claim in a mere three sentences of a thirty page petition for rehearing had he intended to raise it before this court. In any event, Scott could not raise the issue for the first time in a petition for rehearing. *U.S. v. Fiallo–Jacome,* 874 F.2d 1479, 1481 (11th Cir.1989).

8. The district court *sua sponte* addressed the possibility that Scott's narrowing instruction may have been deficient, but disposed of the claim on the ground that Scott had never raised the issue in his habeas corpus petition. *Scott v. Singletary,* No. 83–8293, mem. op. at 12–17 (S.D.Fla. November 7, 1994).

grounds that the statutory construction of the HAC aggravating circumstance rendered the jury instruction unconstitutionally vague and overbroad. *Henderson*, 925 F.2d at 1316 n. 25. On direct appeal, however, the petitioner raised a slightly different version of the claim. In that case, he challenged only Florida's construction of the aggravating circumstance, and not his particular jury instruction. This court held that the claim that the jury instruction was vague was barred due to the fact that the defendant had not raised the same claim before the Florida appellate courts. Similarly, in this case, Scott's attack is on the constitutional adequacy of the Florida Supreme Court's narrowing construction of the HAC aggravating circumstance, and not on his jury instruction on that aggravating circumstance.

Because Scott did not adequately present the claim that his HAC instruction was constitutionally defective when this court previously affirmed the denial of his habeas petition, we deny Scott's motion to recall the mandate. *See Lindsey v. Thigpen*, 875 F.2d 1509, 1515 (11th Cir.1989) (11th Cir.R. 41–1 relief not proper when claim had not been argued to the court when it issued its mandate).

### B. *Habeas Corpus Relief*

█ In his Fed.R.Civ.P. 60(b)(6) motion Scott also requested the district court to grant relief from its prior judgement denying his habeas corpus petition. The district court chose to construe the motion as a subsequent petition for habeas corpus and we will review the district court's denial of relief in the same light.[9]

In his Rule 60(b)(6) motion, Scott maintained that this court's opinion in *Glock v. Singletary*, 36 F.3d 1014, (11th Cir.1994) constitutes "a controlling intervening decision which is inconsistent with the district court and/or court of appeals and which fundamentally affects the propriety of the district court's previous judgment." In *Glock*, the trial judge instructed the jury to consider the existence of the HAC aggravating circumstance. The trial judge, however, did not provide the jury with any narrowing instruc-

tion to aid its interpretation of the HAC circumstance. *Glock*, 36 F.3d 1014. The jury recommended the death penalty, and the trial judge, adopting the sentencing recommendation, imposed a sentence of death.

We vacated Glock's death sentence because the trial judge committed "constitutional error in failing to give the jury an appropriate limiting instruction." We reasoned as follows:

> Because the trial judge must accord great weight to the jury's sentencing recommendation, the jury's recommendation of death in this case, tainted as it was with the inadequate instruction on the atrociousness circumstance, necessarily tainted the trial judge's final decision [imposing the death penalty].

*Glock*, 36 F.3d at 1027.

Scott also contends that *Glock* is new law which demonstrates that this court erred in denying his previous habeas petition. His petition must fail for two reasons: *Glock* does not constitute new law; *Glock* does not demonstrate that this court's previous holding was erroneous.

First, *Glock*'s holding that a jury, as co-sentencer with the trial judge, must rely upon an adequate narrowing instruction is nothing other than an application of the Supreme Court's holding in *Espinosa v. Florida*, —— U.S. ——, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). As Scott concedes, the Supreme Court has long held that a capital sentencing jury must receive an adequate narrowing construction of vague statutory language describing an aggravating circumstance. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

Second, the *Glock* opinion does not overrule this court's previous opinion in *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989). As the district court noted, "prior decisions of panels of the Eleventh Circuit may only be overruled by the *en banc* court or the Supreme Court." *United States v. Evans*, 910 F.2d 790, 797 (11th Cir.1990), *aff'd* —— U.S.

---

**9.** Accordingly, we deny a certificate of probable    cause.

——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). In any event, *Glock* is not inconsistent with our previous opinion in *Scott v. Dugger*. In *Scott v. Dugger*, we held, *inter alia*, that Florida has sufficiently limited its "heinous, atrocious, or cruel" aggravating circumstance to pass constitutional scrutiny. *Scott*, 891 F.2d at 806; *see also Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (Florida's narrowing construction provides adequate "guidance to those charged with the duty of recommending or imposing sentences in capital cases"); *Harich v. Wainwright*, 813 F.2d 1082, 1104 (11th Cir.1987) (Florida Supreme Court has sufficiently narrowed the "HAC" aggravating factor for capital sentencing), *adopted on this point by Harich v. Dugger*, 844 F.2d 1464, 1468–69 (11th Cir.1988). *Glock* does not challenge this holding, but instead reiterates that a Florida capital jury must receive an adequate narrowing construction of the HAC aggravating circumstance in order for the jury's death penalty recommendations to survive constitutional scrutiny.

The district court did not err in denying Scott's Rule 60(b)(6) motion.

## CONCLUSION

Accordingly, we affirm the district court's denial of Scott's Rule 60(b)(6) motion and his request for a stay of execution. We also decline to recall the mandate issued in *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989), deny the petition for certificate of probable cause, and deny the request for a stay of execution.

AFFIRMED AND RELIEF DENIED.

ANDERSON, Circuit Judge, concurring specially:

Respectfully, I disagree with the majority's conclusion that Scott failed in his original federal habeas corpus proceeding to fairly present (as part of his challenge to the heinous, atrocious or cruel ("HAC") aggravating factor) the aspect involving the deficiency in the guidance for the trial jury. For the reasons set out below, I am satisfied that the issue was fairly presented, and thus must be addressed. Addressing the issue it is clear that our prior resolution thereof, *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990), relied upon an erroneous legal principle. Notwithstanding that, I conclude that under the circumstances of this case, Scott has failed to satisfy the high standards required for relief under Fed. R.App.P. 60(b)(6) or recall of our mandate. Thus, I concur in the result reached by the majority.

## I.

First, I explain the deficiency in the guidance for Scott's trial jury with respect to the HAC aggravating circumstance. The guidance which the jury received in the instant case is identical to the guidance received by the jury in *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), which guidance the Supreme Court held was constitutionally deficient. In this case, the guidance received by the jury with respect to the HAC aggravating factor was as follows:

> That the crime for which the Defendant is to be sentenced was especially heinous, atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means designed to inflict a high degree of pain, utter indifference to or enjoyment of the suffering of others, pitilessness.

In *Shell*, the jury received virtually identical guidance with respect to the "especially heinous, atrocious or cruel" factor, namely:

> The word heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of, the suffering of others.

*Shell v. Mississippi*, 498 U.S. at 2, 111 S.Ct. at 313, (Marshall, J., concurring) (quoting *Shell v. State*, 554 So.2d 887, 905–06 (Miss. 1989). The Supreme Court in *Shell* held that this language was constitutionally deficient: "Although the trial court in this case used a limiting instruction to define the 'especially heinous, atrocious or cruel' factor, that instruction is not constitutionally sufficient." *Id.* Similarly, in *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372

(1988), the guidance received by the jury was virtually identical:

> The term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the suffering of others.

*Shell,* 498 U.S. at 2, 111 S.Ct. at 314 (quoting the *Maynard* instruction as set out in *Cartwright v. Maynard,* 822 F.2d 1477, 1488 (10th Cir.1987) (en banc)). Thus, it is clear that the guidance received by the jury in the instant case was constitutionally deficient.

## II.

The next issue that must be addressed is whether *Shell* and *Maynard* constitute new law such that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precludes Scott's reliance thereon. This issue has been decided in Scott's favor. The Supreme Court in *Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992), and this court in *Glock v. Singletary,* 36 F.3d 1014, n. 27 (11th Cir.1994), held that *Maynard* was foreordained by *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Thus, *Maynard* is not new law, and is not subject to a *Teague* bar. As noted above, the relevant language in *Maynard* was virtually identical to that in the instant case.[1] Thus, Scott's claim—that the guidance to his jury on the HAC factor— was constitutionally deficient is not *Teague* barred.

## III.

I turn next to the issue with respect to which I disagree with the majority—i.e., whether Scott fairly presented a claim of deficiency in the guidance of the jury in his original federal habeas corpus proceeding. It is undisputed that Scott fairly presented at least a closely related issue. It is also clear that the State did not interpose any claim of procedural bar in the previous federal habeas corpus proceeding; and thus, if Scott did fairly present the issue then, the State could not now interpose a procedural bar.

The State argues, and the district court in the Rule 60(b) proceedings below concluded, that Scott's claim in the first federal proceedings was limited to a challenge to the arbitrariness of the application of the HAC factor by the Florida Supreme Court. The majority also so holds. Respectfully, I disagree.

As mentioned, it is undisputed that Scott did in fact raise in the first federal proceedings a closely related claim, i.e., a claim based upon the HAC aggravating circumstance. My close reading of Scott's initial brief in the prior appeal to this court persuades me that Scott did in fact fairly present the issue now before us—i.e., the constitutional sufficiency of the guidance which his sentencing jury received. In that brief, at p. 71, Scott argued:

> In the instant case, as in all Florida capital cases, there was a similar [i.e., similar to that in *Maynard* ] absence of guidance for the jury at the trial level. The jury was merely told of the aggravating circumstances. Presumably, the limitation of arbitrary application of the HAC circumstance would not seriously come into play until review by the Supreme Court of Florida. But because that review itself has been arbitrary and capricious with respect to the HAC circumstance, the Eighth Amendment has been violated. A review of Florida Supreme Court's irrational treatment of the circumstance makes the violation obvious.

The foregoing language clearly asserts that the jury itself received insufficient guidance, similar to that in *Maynard.*[2] Dissected into its component parts, Scott's argument was: (1) that the jury received insufficient guidance, and (2) that the narrowing construction entailed in review by the Supreme Court of Florida did not cure the problem because that review was itself inconsistent and arbitrary. Although the rest of the brief, and also the reply brief, focused on the inconsis-

---

1. And also identical to the language in *Shell v. Mississippi, supra.*

2. It is clear that Scott's use of the term "similar" meant similar to *Maynard.* The immediately preceding discussion, indeed in the linchpin of Scott's argument, focused on *Maynard.*

tency of the review by the Florida Supreme Court, the quoted language sets the context of the argument. In other words, the context begins with the inadequacy of the guidance for the jury, and then focuses upon the reviewing function of the Supreme Court of Florida and whether or not that review function can cure the problem.

In its answer brief, the State addressed the merits of Scott's claim and interposed no procedural bar. The State did not take issue with Scott's assertion that there was an "absence of guidance for the jury at the trial level" similar to that in *Maynard*. Rather, the State disputed only Scott's assertion that the review function by the Florida Supreme Court was arbitrary and inconsistent. Understandably responding to the only argument made by the State's answer brief, Scott's reply brief also focused only upon the consistency of the review function by the Florida Supreme Court.

Not only does the language quoted above—"similar absence of guidance for the jury at the trial level"—clearly raise the issue, the context of Scott's argument clearly puts at issue the deficiency in the jury instructions. As noted above, the quoted language frames the context of Scott's argument: (1) that the jury received insufficient guidance, and (2) that the review by the Florida Supreme Court did not cure the problem because that review was itself inconsistent. The claim of deficient jury guidance was therefore a logically necessary predicate,

without which the discussion of the inconsistent appellate review would have been irrelevant. Indeed, the whole point of Scott's lengthy discussion of the inconsistencies in the Florida Supreme Court review was to demonstrate that the review function failed to cure the deficient jury guidance.[3]

Finally, and in addition to the clear language quoted above from Scott's brief and the fact that the claim of deficient jury guidance was a logically necessary predicate for Scott's inconsistent review argument, the fact that Scott's brief relied so heavily upon *Maynard v. Cartwright* reinforces my conclusion that the deficient jury guidance claim was fairly presented. The context of the analysis in *Maynard* was identical to the argument presented by Scott in his brief. In *Maynard*, the Supreme Court's analysis was two-pronged: (1) deficient jury guidance, and (2) a failure by the Oklahoma Supreme Court to cure the problem. The fact that *Maynard* was the linchpin of Scott's argument bolsters my conclusion that Scott's presentation to this court in the prior appeal must be recognized to have fairly presented a claim that there was an "absence of guidance for the jury at the trial level" and that the review function by the Florida Supreme Court failed to cure the problem because the review was itself inconsistent and arbitrary. For the foregoing reasons,[4] I disagree with the failure of the majority to recognize the fact that the issue was fairly presented by Scott.[5]

---

**3.** The majority is misled because most of the space devoted to the HAC claim in Scott's brief addresses the inconsistency of the appellate review function. However, as noted in the text, the consistency of appellate review was relevant only in conjunction with Scott's claim that there was an "absence of guidance for the jury." Nor did Scott rely merely upon the fact that deficient jury guidance was a logically necessary predicate for his argument; the clear language of his brief framed the argument in that manner.

**4.** I do not believe that *Henderson v. Dugger*, 925 F.2d 1309 (11th Cir.1991), is inconsistent with my conclusion that on the facts of this case Scott did fairly raise the jury guidance issue. In *Henderson*, this court stated that *Henderson* had referred "only to Florida's construction of the aggravating factors." *Id.* at 1317. By contrast, in the instant case, as demonstrated above, Scott expressly referred not only to the inconsistent appellate review function, but also to the "absence of guidance for the jury at the trial level."

**5.** The majority asserts throughout its opinion that none of the claims which Scott presented to the state courts challenged his HAC instruction. I do believe that the issue was not raised at trial. However, unlike the majority, I am not at all sure that the issue was not fairly presented to the state courts, and the State's mere assertion to that effect rings hollow in the face of their similar assertion (which is erroneous) with respect to Scott's previous appeal to this court. Unfortunately, the record is not available to me to verify whether the State is similarly misreading Scott's presentation to the state courts. In any event, I believe the issue was fairly presented in Scott's original federal habeas corpus proceeding, and it is clear that the State interposed no procedural bar. Although the State, the district court, and the majority assert that the issue was not fairly presented in Scott's previous appeal to this court, the language which I quote above and the context of Scott's argument persuade me otherwise.

### IV.

Having determined that Scott has a meritorious claim which was properly preserved in his first federal habeas corpus proceeding and which is not barred by any of the several procedural bars, I turn next to whether this claim warrants relief pursuant to Rule 60(b)(6) and/or recall of our mandate. Scott argues that such relief is justified here because of an error of law. In *Ritter v. Smith*, 811 F.2d 1398 (11th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987), we determined that such relief was warranted when a claim was presented and decided, and then it became apparent that it had been wrongly decided.

### A.

I focus first on whether our prior decision, 891 F.2d 800, erroneously decided Scott's claim. Our prior decision was based on the misapprehension that the determinative factor in resolving a challenge to the vagueness of the HAC aggravating circumstance was the narrowing review function of the sentencing judge and the Florida Supreme Court. We labored under the erroneous assumption that it was not important whether the jury was charged with the narrowing language, because the trial judge (who of course knew the law of *State v. Dixon*, 283 So.2d 1 (Fla. 1973), *cert. denied, sub nom. Hunter v. Florida*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), and *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)) was the ultimate sentencer, and because of the narrowing construction employed by the Florida Supreme Court in its review function.[6] However, the Supreme Court in *Espinosa v. Florida*, —— U.S. ——, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), held otherwise, and we now know we were wrong. In *Glock v. Singletary, supra,* n. 26, this court held that *Espinosa* was not new law for the purposes of *Teague v. Lane, supra.* Thus, we now know not only that we were wrong in

deciding *Scott*, but that it was well established at that time, indeed since *Tedder v. State*, 322 So.2d 908 (Fla.1975), that a Florida sentencing jury was a co-sentencer along with the trial judge, and thus must itself receive the narrowing construction of the HAC factor. Accordingly, the ground upon which we decided Scott's claim in his first federal habeas corpus proceeding was an error of law. Although we applied an erroneous rule of law in our prior resolution of Scott's claim, I conclude for the reasons set out in Part IV.B. that neither Rule 60(b)(6) relief nor recall of our mandate is appropriate.

### B.

■ A mere error of law is not sufficient in and of itself to obtain relief under Rule 60(b)(6). *Ritter v. Smith*, 811 F.2d at 1401 ("a change in the law will not always provide the truly extraordinary circumstances necessary to reopen a case."). Recall of a mandate involves a similarly high standard. Recall of our mandate is appropriate only "to prevent injustice." Eleventh Circuit Rule 41–1(b). I conclude that the circumstances of the instant case do not rise to the level required for recall of our mandate or for Rule 60(b)(6) relief.

It is true that an almost identical instruction to the jury has been held to be deficient in *Maynard* and *Shell*. However, it is also true that a portion of the challenged instruction charged Scott's jury on the meaning of the term cruel:

> Cruel means designed to inflict a high degree of pain, utter indifference to or enjoyment the suffering of others, pitilessness.

The concurring opinion in *Shell*, 498 U.S. at 2–4, 111 S.Ct. at 314, suggests that such a definition of cruel may meet constitutional muster, but that the constitutional vagueness occurred in the alternative grounds of heinous and atrocious. Thus, I cannot conclude

---

I much prefer to resolve this case on the surer basis which I explain in Part IV of this opinion.

**6.** For a more explicit statement of this erroneous assumption, see *Bertolotti v. Dugger*, 883 F.2d 1503, 1526–27 (11th Cir.1989), *cert. denied,* 497

U.S. 1031, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990); *Hargrave v. Wainwright*, 804 F.2d 1182, 1192–96 & n. 23; *vacated for rehearing en banc,* 809 F.2d 1486, *rev'd on other grounds,* 832 F.2d 1528 (11th Cir.1987), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989).

that the cruel definition which Scott's jury heard (aside from the heinous definition and the atrocious definition) constituted a clear error of law. No court has so held. *See Maynard,* 486 U.S. at 365, 108 S.Ct. at 1859 ("We also do not hold that some kind of torture or serious physical abuse is the only limiting construction."). In Scott's case, the particular facts persuade me that there is no reasonable doubt but that the jury would have applied the cruel definition to the exclusion of the vaguer heinous and atrocious definitions. My reason is that the facts of the instant murder constitute overwhelming evidence of "a high degree of pain" and "utter indifference . . . to the suffering of others." In other words the facts clearly focused the jury on the high degree of pain and the utter indifference of Scott to the victim's suffering. The victim was found in his own home the next morning covered with blood, his hands and feet bound, and brutally beaten to death. In addition to the other blows, the victim sustained six blows to the head with a blunt instrument so severe that it caused a compressed fracture of the skull. *Id.* The doctor testified that the victim was still alive when his hands and feet were bound, and that the subsequent blows to the head were fatal. *Id.* at 869. Thus, the evidence overwhelmingly established torture and indifference to the suffering of the victim. The jury having heard those facts and the instruction which was given, I readily

conclude, to a high degree of certainty, that the jury applied the more specific cruel definition, and not the vaguer heinous or atrocious definition. The cruel definition was specifically oriented to the pain and suffering which the victim in this case suffered to a high degree.[7] Although it is clear that the entire heinous, atrocious or cruel instruction was deficient, it is far from clear that the jury relied upon the unconstitutionally vague portion; indeed, I conclude (with a high degree of certainty) quite the contrary. Therefore, Scott has failed to establish a *clear* constitutional error infecting his death sentence. *Ritter v. Smith,* 811 F.2d at 1401.

In addition, several other factors contribute to my conclusion that Scott has failed to satisfy the high standard for recall of a mandate or Rule 60(b)(6) relief. As in *Ritter v. Smith,* 811 F.2d at 1403, considerations of comity point against Scott's position. Also, it is significant that the overwhelming evidence in this case indicates that the murder was committed in a manner that fell well within the narrowest conceivable definition of the HAC aggravating factor. Grant of the writ in this case would be futile, because the overwhelming evidence indicates clearly that the Florida Supreme Court would exercise its review function to conclude that the deficiency in the instruction in this case was harmless beyond a reasonable doubt.[8]

7. In other contexts and under some circumstances, the Supreme Court has condemned *post hoc* speculation as to which alternative ground informed a jury's verdict. *See Shell,* 498 U.S. at 2–4, 111 S.Ct. at 314; *Cf. Boyde v. California,* 494 U.S. 370, 378–82, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990). In the very different posture of this case (Rule 60(b)(6) or recall of a mandate), in which Scott must demonstrate injustice or extraordinary circumstances, I am confident that it is appropriate to conduct an analysis to determine whether there is any risk that the jury did in fact rely on the unconstitutionally vague alternative, or whether we can be sufficiently confident that the jury in fact relied only upon the constitutional alternative (i.e., the definition of cruel). No cases suggest otherwise.

8. Scott argues that it would be inappropriate for this court to conduct a harmless error review (either following the traditional analysis of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or the new analysis for most federal habeas corpus cases set out in *Brecht v.*

*Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). He argues that Supreme Court case law indicates that when an aggravating circumstance has been determined to be unconstitutionally vague, only the state appellate courts can conduct the harmless error review, citing *Richmond v. Lewis,* —— U.S. ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992), *Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1140, 117 L.Ed.2d 367 (1992), and *Maynard v. Cartwright,* 486 U.S. 356, 363–65, 108 S.Ct. 1853, 1859, 100 L.Ed.2d 372 (1988). One argument against Scott's position is that this court could, by application of well-established harmless error review, eliminate any reasonable doubt that "the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor." *Richmond v. Lewis,* —— U.S. at ——, 113 S.Ct. at 535. The court could do that by determining beyond any reasonable doubt that the jury relied on the specific cruel definition and not on the unconstitutionally vague portion of the instruction (pursuant to an analysis similar to the one described in the text

All of the foregoing reasons in combination persuade me that Scott has failed to demonstrate the extraordinary circumstances required for Rule 60(b)(6) relief, and has failed to show that it is necessary to recall our mandate "to prevent injustice."

## V.

Accordingly, I concur in the decision to deny Scott's motion to recall the mandate, and the decision to affirm the district court's denial of Rule 60(b)(6) relief, and the decision to deny Scott's application for a certificate of probable cause and stay of his execution.

DUBINA, Circuit Judge, concurring specially:

I agree with Judge Hatchett that Scott did not adequately present the claim that his HAC instruction was constitutionally defective. I also agree that the district court did not err in denying Scott's Rule 60(b)(6) motion. For these reasons, I concur in all of Judge Hatchett's opinion. Even if, however, we determined that Scott adequately presented his HAC instruction claim, he would be entitled to no relief, as explained by Judge Anderson in Part IV.B of his opinion concurring specially. Accordingly, I concur in that part of Judge Anderson's opinion as well.

of this Part IV.B). In other words, through well-established harmless error analysis, this court could determine that the guidance actually applied by the jury was not deficient after all and thus that there is in this particular case no error comparable to the error contemplated in *Richmond v. Lewis, Stringer,* and *Maynard.* Those cases contemplated constitutional error infecting the *entire* HAC factor; thus, those cases contemplated a harmless error review to determine whether other aggravating circumstances, considered in light of the circumstances of the case, were such that an appellate court could conclude that the effect of the vague aggravating factor was harmless beyond a reasonable doubt. The harmless error review contemplated by those Supreme Court cases much more nearly approached a reweighing of the sentencing circumstances, which of course would be a sentencing function entirely inappropriate for federal courts to undertake. By contrast the harmless error review which would be called for in this case would leave intact the HAC factor. Although such analysis is clearly distinguishable from the harmless error analysis contemplated in *Richmond v. Lewis, Stringer,* and *Maynard,* in this case we need not resolve the question of whether it would be appropriate for this court itself to conduct such a harmless error review. In the peculiar posture of this case, Scott must demonstrate extraordinary circumstances to obtain Rule 60(b)(6) relief or injustice to obtain a recall of the mandate. In this posture, it suffices for this court to satisfy itself that any grant of the writ would be futile because the Florida Supreme Court, in conducting the appropriate harmless error review (and Scott concedes that it would be appropriate for the Florida Supreme Court to do so), would conclude beyond any reasonable doubt that the unconstitutionally vague instruction did not affect the jury's weighing process.