## 38520. JONES v. THE STATE.

GREGORY, Justice.

In September 1979 the appellant, Brandon Ashton Jones, also known as Wilbur May, was convicted of the murder of Roger Tackett and sentenced to death by electrocution. The jury found as aggravating circumstances (1) that the offense of murder was committed while appellant was engaged in the commission of an armed robbery (Code Ann. § 27-2534.1 (b)(2)), and (2) that the offense of murder was outrageously and wantonly vile, horrible and inhuman, in that it involved torture, depravity of mind and an aggravated battery to the victim (Code Ann. § 27-2534.1 (b)(7)).

The evidence at trial showed that at approximately 11:20 p.m. on June 16, 1979, the victim, Roger Tackett, arrived at the Tenneco Service Station on Delk Road in Cobb County. The victim managed the self-service station which included a food market. The victim assisted the two female employees working the evening shift in closing the station; after the employees left, the victim remained behind to complete some paperwork. At approximately 1:00 a.m. on

June 17, 1979, one of the evening shift employees drove by the Tenneco station and observed that the victim's car was still there.

At approximately 1:50 a. m. on June 17, Officer Kendle of the Cobb County Police Department drove a stranded woman to the Tenneco station to make a phone call from the phone booth located on the east side of the station. Observing the victim's car in front of the Tenneco at a time when the station was obviously closed, Officer Kendle became suspicious. He walked toward the store and saw the appellant stick his head out of the back storeroom door, quickly look around and close the door. The appellant apparently did not see Officer Kendle. Officer Kendle entered the Tenneco station through the front door and heard three gunshots fired in rapid succession, a short pause, and then a fourth gunshot, all coming from the back storeroom. Officer Kendle drew his gun, announced his presence and ordered appellant and Van Roosevelt Solomon[1] out of the storeroom. After apprehending the two men, Officer Kendle inquired what they were doing in the store. Solomon replied, "burglarizing." Neither Solomon nor appellant were in possession of weapons at this time. Officer Kendle then informed appellant and Solomon of their rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Several minutes later, Officer Kendle telephoned the emergency number located on the front of the Tenneco and learned the victim was supposed to be at the station. During this time appellant volunteered to another officer[2] that "there is a man in the back — hurt bad . . . He has been shot." The officers broke into the locked storeroom with a crowbar and discovered the victim's body. The victim had been shot five times. Near the victim's body was a cardboard box containing a number of brown plastic garbage bags. On top of these bags police found a Smith and Wesson .38 caliber revolver and a Colt snub nose .38 revolver. The Colt revolver had four spent rounds in its chambers; the Smith and Wesson revolver had one spent round. Police also discovered the cash drawer atop milk crates in the walk-in cooler area of the food mart. The cash drawer, wrapped in a brown plastic garbage bag, contained $253.50.

The medical examiner who performed the autopsy on the victim testified at trial that the victim had been shot twice in the hip area,

---

[1] Van Roosevelt Solomon was convicted of the murder of Roger Tackett and sentenced to death. His conviction was affirmed on appeal. See, *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1981).

[2] Shortly after Officer Kendle apprehended Solomon and the appellant, a back-up unit from the Cobb County Police Department arrived. Also, a private security officer arrived to assist in the arrest when he heard Officer Kendle's radio call for a back-up unit.

once in the jaw, once in the thumb and once behind the left ear. The medical examiner also testified that the numerous bruises and abrasions on the victim's face, rib cage and left elbow, indicated that the victim had been beaten prior to his death. In reconstructing the sequence in which the victim's wounds were incurred, the medical examiner opined that the victim had first sustained debilitating gunshot wounds to his hips and left thumb; that the victim was still alive when the fourth wound, a shot to the jaw, was sustained as evidenced by aspirated blood present in the victim's lungs; and that the final shot behind the victim's left ear was most probably made with the muzzle of the gun "just about in contact with the skin."

The appellant testified in his own behalf that he and Van Roosevelt Solomon had driven to the Tenneco in the early morning hours of June 17, 1979 to meet a person from whom appellant had agreed to buy marijuana. Appellant testified that while waiting in Solomon's van parked behind the Tenneco, appellant and Solomon discussed how easy it would be to burglarize the Tenneco. Appellant stated that when it became apparent to him that his drug supplier was not going to appear, he and Solomon went inside the Tenneco to purchase some beer. Appellant testified that when they found no one in the front of the store, they walked into the back storeroom and discovered the victim's lifeless body. At that point the two men started to leave the station, but panicked when appellant saw Officer Kendle's police car parked outside the station. Appellant stated that he and Solomon remained in the station out of fear that they would be implicated in the death of the victim if the officer discovered them. Appellant testified that while his recollection of certain parts of the evening was "a blank," he did not harm the victim or take money from the station's cash drawer. He testified that he never heard gunshots nor fired a gun while at the Tenneco, but stated that he had fired a gun much earlier in the evening "into the dirt."

Following arrest, neutron activation tests were performed on Solomon and appellant. The results of the tests indicated that both men had recently fired guns.

(1) In his first three enumerations of error the appellant urges the general grounds. Our examination of the record compels the conclusion that a rational trier of fact could find the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *Tyler v. State,* 247 Ga. 119 (274 SE2d 549) (1981).

(2) (a) Appellant objects to the admission of certain photographs of the victim in evidence as "cumulative . . ., having no probative value and . . . offered only to inflame the passions of the jury." In this case seven photographs of the victim taken at the scene

of the crime were admitted into evidence. In six of these photographs the victim is lying face down on the floor of the storeroom. In the seventh the victim is lying face up. Two other photographs of the victim, taken at the scene, were excluded by the trial court on the ground that they were merely cumulative of other photographs already admitted. Appellant also objects to one photograph illustrating the face wounds of the victim taken after the victim was removed from the scene, but prior to the autopsy.

"[U]nless there are some very exceptional circumstances the photographs of the deceased are generally admissible to show the nature and extent of the wounds, the location of the body, the crime scene, the identity of the victim and other material issues." *Blankenship v. State,* 247 Ga. 590, 595-6 (277 SE2d 505) (1981); *Mooney v. State,* 243 Ga. 373, 394 (245 SE2d 337) (1979). In this case all eight photographs of the victim were relied on by the medical examiner in his testimony reconstructing the sequence of events leading up to the victim's death. While it is true, as appellant suggests, that the photographs are cumulative in the sense that all are photographs of the victim, each photograph is distinct. Each photograph either isolates one of the five wounds sustained by the victim or illustrates the victim's physical relationship to the crime scene. Under the criteria of *Blankenship* and *Mooney,* supra, the photographs were admissible for these purposes. We further note from our review of the record that the trial court carefully examined all photographs tendered by the State and excluded, not only repetitive photographs of the victim, but repetitive photographs of the crime scene as well. We find that the trial court acted responsibly and appropriately in this regard.

Appellant suggests that we adopt a rule whereby photographs of the victim will not be admitted where "the facts that these exhibits would tend to prove can be proved by testimony without the use of photographs." In this case, as in most murder cases, the State offered photographs of the victim in evidence to aid the jury in following the medical examiner's testimony as to the nature and extent of the victim's wounds, the cause of death and the sequence of events leading up to victim's death. The medical examiner's testimony reconstructed the order in which the victim's wounds were incurred by examining the angles at which the bullets entered the victim's body and the position of the victim's body in relation to the crime scene; his testimony was lengthy, complicated and highly technical. Undoubtedly the photographs assisted the jury in comprehending this testimony. We decline to adopt a rule which would allow the admission of photographs only when they prove facts which cannot be proved by testimony.

(b) In a related enumeration of error appellant contends that the trial court erred in allowing the State to display the photographs of the victim on a screen by use of an overhead projector. Appellant maintains that enlarging the "gory photographs" of the victim was highly prejudicial to his case.

Enlarged photographs are admissible in evidence provided "there is no distortion or enlargement of the objects in the pictures." *Epps v. State,* 216 Ga. 606, 613 (118 SE2d 574) (1961); *Wilson v. State,* 245 Ga. 49, 55 (262 SE2d 810) (1980). Appellant does not aver that the photographs displayed to the jury were in any way distorted. Further, we acknowledge that displaying a photograph to the jury on a screen while a witness testifies to facts illustrated in the photograph enables all members of the jury to simultaneously follow the witness's testimony with reference to the photograph. In this case the medical examiner used a pointer to indicate the particular aspects of each photograph to which his testimony referred. We find no error.

(3) Appellant next argues that the trial court abused its discretion in not granting his request for a ten minute recess prior to striking the jury. At the end of the voir dire appellant requested the recess to get his "thoughts together on the last thirty [jurors] we have gone through." The trial court denied the request, noting that the parties had spent the entire day conducting the voir dire. Appellant states that it is "unknown or unknowable what the result of the trial would have been had [his] request not been denied."

The trial court allowed the parties great latitude in the scope of the voir dire and appellant was permitted to extensively question each panel of jurors. He has not shown that he was forced, by time constraints, to select a juror from the last thirty questioned whom he would not have selected had his request for a recess been honored. We inquire only whether the trial court abused its discretion in denying the request. We conclude that it did not. *Kyles v. State,* 243 Ga. 490 (255 SE2d 10) (1979).

(4) Appellant argues that the trial court erred in invoking Rule 58 of the "Rules of the Superior Courts" (Code Ann. § 24-3358), prior to striking the jury. This rule provides, "[I]n striking juries, not more than one minute shall be allowed either party for each strike; and if either party shall fail to strike, by such failure he shall forfeit a strike; and if more than 12 jurors remain upon the jury list, the first 12 not stricken shall constitute the jury."

After the parties had made challenges for cause, but prior to striking the jury, the trial court announced its intention to invoke the rule of Code Ann. § 24-3358. Appellant did not object at this time but waited until the jury had been struck and dismissed for the night to voice his objections to the one-minute limitation.

Four times during the striking of the jury the trial court notified appellant that appellant had taken in excess of one minute to decide whether to strike a juror or not.[3] However, on none of these occasions did the trial court require appellant to forfeit a strike. In fact, the record indicates that throughout the striking of the jury appellant was allowed to take over a minute in deciding whether to strike each juror without penalty.

While we agree with appellant that counsel should be given a reasonable time in which to decide whether to strike a potential juror, we note that the trial court is vested with a broad discretion to determine how much time is reasonable. We cannot say that, under the circumstances of this case, the trial court abused that discretion. Further, we note that appellant has not shown he was harmed by the time limitation imposed upon him. Appellant argues, however that harm need not be shown and that it is reversible error in a capital felony case to limit counsel's time in exercising a peremptory strike to one minute. We believe that control of the process of juror selection is a matter best left to the sound discretion of the trial court, that discretion to be reviewed by this court on a case-by-case basis.

(5) During the sentencing phase of the trial the district attorney asked appellant on cross-examination whether appellant had ever told a police officer that appellant was robbing the Tenneco when apprehended by Officer Kendle. Defense counsel objected to the question on the ground that there was no evidence that appellant had committed armed robbery; appellant then moved for a mistrial. The State answered that it was relying on appellant's statement to police officers that he was apprehended while robbing the Tenneco for impeachment purposes only. The trial court overruled appellant's objection. Appellant then replied that he was "pretty sure [he] didn't say that."

During closing arguments of the sentencing phase the district attorney explained to the jury that the State was relying on Code Ann. § 27-2534.1 (b)(2), that the murder had been committed during the commission of an armed robbery, as an aggravating circumstance in the case. The district attorney then proceeded to extensively outline the evidence which, he argued, supported a finding of this aggravating circumstance. Appellant made no objection to the State's argument, but following his own closing argument renewed his motion for mistrial on the ground that the district attorney

---

[3] On the first three of these occasions the appellant struck the juror; on the fourth the appellant accepted the juror.

misrepresented the content of appellant's statement to police and that the appellant had never made a statement that he was "robbing the Tenneco." Out of the presence of the jury the trial court reviewed appellant's statement to police; the trial court agreed that appellant had made no reference to "robbing the Tenneco," but had made a reference to "burglarizing the Tenneco." The trial court then instructed the jury that "there is no statement of the defendant to any police officer that he intended to rob Roger Tackett. So you are instructed to disregard the District Attorney's question to the defendant in this regard. Now, this is not an instruction that you cannot find that that was a purpose of the defendant, should you believe the evidence would support that finding beyond a reasonable doubt." Later the trial court instructed the jury that even if they found the existence of an aggravating circumstance, they would still be authorized to recommend the defendant to the mercy of the court; that if they found that the State had not proven an aggravating circumstance beyond a reasonable doubt, they must recommend a life sentence; and that if a doubt, for any reason, existed as to the guilt of an aggravating circumstance, they should recommend life imprisonment.

Following the trial court's charge appellant renewed his motion for a mistrial. On appeal appellant contends that armed robbery was not an issue in the case nor was any evidence presented to support a finding that appellant had been engaged in the commission of an armed robbery during the murder of Roger Tackett. Thus, appellant argues, the trial court erred in charging the jury at all on the aggravating circumstance of armed robbery. We do not agree.

It is clear from the record that the State gave timely notice to appellant of its intention to seek the death penalty; this notification included notice of the aggravating circumstances on which the State intended to rely, including Code Ann. § 27-2534.1 (b)(2). Under the evidence presented by the State the jury was authorized to find that appellant was engaged in the commission of an armed robbery during the murder of Roger Tackett. Jackson v. Virginia, supra. Therefore, the trial court did not err in charging the jury that they could consider armed robbery as an aggravating circumstance.

Furthermore, we conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *Ladson v. State,* 248 Ga. 470 (285 SE2d 508) (1981). The trial court complied with Code Ann. § 81-1009 in administering "all needful and proper instructions to the jury [to] endeavor to remove the improper impression [made by the district attorney's statement] from their minds."

(6) Appellant contends that in order for armed robbery to be

considered as an aggravating circumstance in his case, he must first have been convicted of the offense of armed robbery. Therefore, he maintains, the trial court erred in charging the jury that they could find armed robbery as an aggravating circumstance. However, this issue has been decided adversely to appellant. *Fair v. State,* 245 Ga. 868, 870 (268 SE2d 316) (1980); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); *Pryor v. State,* 238 Ga. 698, 703 (234 SE2d 918) (1977); *Hooks v. State,* 233 Ga. 149, 151 (210 SE2d 668) (1974).

(7) Last, appellant argues that the trial court's charge merely reciting the aggravating circumstance established by Code Ann. § 27-2534.1 (b)(7) that the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind and an aggravated battery to the victim," violates the United States Supreme Court's mandate in Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980) that "the trial court's instructions [with regard to Code Ann. § 27-2534.1 (b)(7)] must channel the sentencer's discretion by a clear and objective standard that provides specific and detailed guidance." Thus, appellant urges, the trial court erred in failing to give an enlightening instruction to the jury on Code Ann. § 27-2534.1 (b)(7).

"While we do not read Godfrey as holding that no death sentence imposed on the basis of this aggravating circumstance may stand absent clarifying instructions by the trial court, we find it unnecessary to decide that question here because there was no request for clarifying instructions." *Gilreath v. State,* 247 Ga. 814, 836 (279 SE2d 650) (1981).

### Sentence Review

As required by Georgia Laws, 1973, p. 159, et seq., (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury and the evidence concerning both the crime and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found the following aggravating circumstances: (a) The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery, Code Ann. § 27-2534.1 (b) (2); and, (b) The offense of murder was outrageously vile, horrible, or inhuman in that it involved torture, depravity of mind, and an aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7).

The State's evidence shows that the appellant and his co-defendant sought to rob the victim at gunpoint. The store's cash

drawer was found in close proximity to the spot where the appellant and his co-defendant were arrested. Police found two pistols which had been recently fired near the victim. At trial appellant denied any participation in the crime; rather, he contended that he had entered the store to make a purchase and found the victim dead in the rear storeroom. The appellant did admit, however, that one of the pistols found in the storeroom area belonged to his co-defendant. Moreover, testing indicated that both the appellant and his co-defendant had recently fired a weapon. Medical testimony established that the victim had been struck in the face and shot four times at close range before succumbing to a fifth and fatal wound. Under these facts we conclude that the victim was subjected to serious physical abuse prior to death. As we held in *Hance v. State,* 245 Ga. 856 (3) (268 SE2d 339) (1980), torture, as the term is used in Code Ann. § 27-2534.1 (b) (7) occurs when the victim is subjected, as in this case, to serious physical abuse prior to death. A defendant who tortures the victim or subjects the victim to an aggravated battery before killing the victim can be found to have a depraved mind within the meaning of Code Ann. § 27-2534.1 (b) (7).

By any rational standard, the murder was outrageously or wantonly vile, horrible and inhuman. It was the execution-style murder of an unarmed and wounded armed robbery victim. In this respect, this murder is distinguishable from those murders for which the death penalty is not appropriate. *Hance v. State,* supra; Godfrey v. Georgia, 446 U. S. 420, supra. The evidence shows that appellant and his co-defendant beat and shot the victim to force him to divulge the location of the store's cash drawer. While in a debilitated state the victim was executed with a single shot to the back of the head. The victim was not known by either the appellant or his co-defendant prior to the murder. The victim gave his assailants no reason to assault him, nor was the victim subjecting his assailants to emotional trauma. Following the murder, the appellant and his co-defendant attempted to hide the crime. We find the evidence factually substantiates and supports the findings of the two statutory aggravating circumstances and sentence of death by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, supra.

We have thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial and find the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find the following similar

cases listed in the appendix support the affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 1982.

*Greene & Davis, H. Darrell Greene,* for appellant.
*Thomas J. Charron, District Attorney, Mary E. Staley, Assistant District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975); *Brown v. State,* 235 Ga. 644 (220 SE2d 922) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); *Hamilton v. State,* 244 Ga. 145 (259 SE2d 81) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).