[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  11-14774-P

_____

BRANDON ASTOR JONES,

Petitioner - Appellant,

versus

GDCP WARDEN,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before MARCUS, WILSON and WILLIAM PRYOR, Circuit Judges:

MARCUS, Circuit Judge:

Over thirty-six years after he robbed and murdered Roger Tackett, petitioner

Brandon Jones is scheduled to be executed by the Georgia Department of

Corrections on February 2, 2016.  On January 21, 2016, he moved this Court to

recall its 2014 mandate denying his petition for habeas corpus relief and to

reconsider his original habeas petition after the full Court issues an en banc

decision in a different, although currently pending case, Wilson v. Warden, Georgia Diagnostic Prison. Jones has also filed a motion with this Court to stay his execution pending reevaluation of his original habeas petition in light of the forthcoming Wilson decision. The state opposes both motions.

After carefully reviewing the record before us and the party's submissions, we conclude that we are foreclosed by the Antiterrorism and Effective Death Penalty Act and Supreme Court precedent from recalling the mandate denying habeas relief. Furthermore, even if we were not foreclosed and examined the merits of his motion, we would still deny it because, regardless of how Wilson is decided, Jones's claim is without merit. Finally, even if we could recall the mandate, our respect for the State of Georgia's interest in the finality of its criminal judgments would strongly counsel against doing so. We also deny Jones's motion to stay his execution because, regardless of how Wilson is decided, Jones has not shown a substantial likelihood that he will prevail on the merits of his underlying claim.

## I.

## A.

Jones was originally convicted and sentenced to death by the Superior Court of Cobb County in 1979 for the robbery and murder of Roger Tackett, a convenience store manager. As the state court detailed, Jones and his co-

2

defendant, Van Roosevelt Solomon, were found at the scene of the murder by a police officer. Jones v. State, 293 S.E.2d 708, 709-10 (Ga. 1982) ("Jones I"). The officer approached the convenience store after hours, saw Jones stick his head out of the storeroom door before closing it again, and then heard three gunshots, a pause, and one more shot. Id. The officer found Solomon and Jones in the storeroom, where he later discovered Mr. Tackett's body and two .38 caliber revolvers. Id. at 710. The medical examiner who performed Mr. Tackett's autopsy testified at trial that Mr. Tackett had been shot twice in the hip area, once in the jaw, once in the thumb, and once behind the left ear. Id. Jones and Solomon underwent neutron activation tests and both were found to have recently fired guns. Id. at 710-11.

The Georgia Supreme Court affirmed Jones's conviction and death sentence in 1982. Id. at 715. Jones filed a state habeas corpus petition, which the Superior Court of Butts County denied in 1982; the Georgia Supreme Court affirmed that denial in 1984. Jones v. Francis, 312 S.E.2d 300, 306 (Ga. 1984). The United States Supreme Court denied Jones's petition for a writ of certiorari. Jones v. Francis, 469 U.S. 873 (1984). Jones then petitioned for habeas relief in federal district court, and a district court judge in the Northern District of Georgia granted the petition in part and ordered a new sentencing proceeding because the state trial

court had improperly allowed the jury to bring a Bible into the deliberation room.
See Jones v. Kemp, 706 F. Supp. 1534, 1560 (N.D. Ga. 1989).

In 1997, the Superior Court of Cobb County sentenced Jones to death a
second time. See Jones v. State, 539 S.E.2d 154, 157 (Ga. 2000) ("Jones II"),
reh'g den. Dec. 14, 2000, cert. den. 534 U.S. 839 (2001). The Georgia Supreme
Court again affirmed Mr. Jones's death sentence. Id. Jones filed a pro se petition
for a writ of habeas corpus in Butts County Superior Court, which was later
amended by counsel. The superior court denied all claims for relief. Jones v.
Terry, Case No. 2002-V-79 (unpublished order of March 17, 2006). The Georgia
Supreme Court summarily denied his Application for Certificate of Probable Cause
to Appeal on September 3, 2008. Jones v. Terry, No. S06E1736 (Ga. September 3,
2008).

On May 8, 2009, he commenced federal habeas corpus review pursuant to
28 U.S.C. § 2254, raising eleven grounds for relief. On August 10, 2011, the
district court in the Northern District of Georgia denied his petition in its entirety
in an unpublished order, but granted Jones a certificate of appealability on two
claims: (1) that Jones's trial counsel provided ineffective assistance of counsel in
violation of Strickland v. Washington, 466 U.S. 668 (1984), by failing to
investigate certain sources of potential mitigation evidence, and (2)  that the
prosecution's comments made during closing argument at Jones's sentencing

4

violated his privilege against self-incrimination.  See Order, Jones v. Hall, No. 09-cv-01228-CAP (N.D. Ga. August 10, 2011) (Docket No. 45).

On March 20, 2014, our Court affirmed the district court's denial of relief on both of those claims.  See March 20, 2014 Opinion (appended hereto as Attachment A).  In that decision, we reviewed "the Superior Court's denial of habeas relief" as the final state-court determination of Jones's claim, "[s]ince the Georgia Supreme Court declined to review the merits of the case."  See id. at 21 n.4.  On April 24, 2014, we withdrew our March opinion and issued an amended decision, again affirming the district court.  Jones v. GDCP Warden, 753 F.3d 1171 (11th Cir. 2014) ("Jones III").  In the amended decision, however, we recognized that "[t]he Georgia Supreme Court's denial of the application for a certificate of probable cause to appeal was the final state-court determination" of Jones's claim.  Id. at 1182.  Jones filed a petition for rehearing en banc, which our Court denied on December 1, 2014.  Our mandate issued on December 10, 2014.  Jones then petitioned the Supreme Court of the United States for a writ of certiorari, which was denied on October 5, 2015.  Jones v. Chatman, 136 S. Ct. 43 (2015).  And on November 30, 2015, the Supreme Court denied his Petition for Rehearing from the denial of certiorari.  Jones v. Chatman, 136 S. Ct. 570 (2015).

Soon thereafter, on December 22, 2015, Jones filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of

Georgia, challenging the constitutionality of Georgia's method of execution. On January 13, 2016, pursuant to the state's motion, the Cobb County Superior Court issued an order authorizing an execution window for Jones, and the Georgia Department of Corrections scheduled his execution for **February 2, 2016 at 7:00 p.m. EST**.

The district court dismissed Jones's civil rights complaint on January 21, 2016. It first held that Jones's challenge to Georgia's method of execution is time-barred, since the statute of limitations on his claim ran on October 4, 2003, and there was no "significant change" to the lethal injection protocol that would reset the time clock. The district court also rejected his challenge on the merits. Based on binding prior precedent from this Court, the district court held that Jones had failed to state a claim under either the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. See Terrell v. Bryson, 807 F.3d 1276 (11th Cir. 2015); Gissendaner v. Comm'r, Ga. Dep't of Corr., 803 F.3d 565 (11th Cir. 2015); Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1283 (11th Cir. 2015); Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1267 (11th Cir.

6

2014).  On January 25, 2016, Jones appealed from the decision of the district court dismissing his § 1983 complaint.[1]

## B.

After we had issued our decision affirming the denial of Jones's habeas petition (Jones III), another panel of this Court decided Wilson v. Warden, Georgia Diagnostic Prison, 774 F.3d 671 (2014).  In that case, the Wilson panel relied on our amended decision in Jones III to observe that "the one-line decision of the Supreme Court of Georgia denying Wilson's certificate of probable cause is the relevant state-court decision for our review because it is the final decision 'on the merits.'"  Id. at 678.  On July 30, 2015, our Court granted rehearing en banc in Wilson, vacated the panel opinion, and directed the parties to address en banc:

> [Whether] a federal habeas court [is] required to look through a state appellate court's summary decision that is an adjudication on the merits to the reasoning in a lower court decision when deciding whether the state appellate court's decision is entitled to deference under 28 U.S.C. § 2254(d)[.]

Oral argument was held by our Court en banc on October 20, 2015.  Soon thereafter, we directed counsel to file supplemental briefs addressing a subsidiary question:

---

[1] Jones's appeal from the district court's rejection of his § 1983 complaint asks our full Court to review initially the matter en banc.  He has also filed an Emergency Motion to Stay Execution until the Court rules on his en banc petition.  We will address these motions by separate order.

7

[W]hether the denial of an application for a certificate of probable cause by the Georgia Supreme Court is an adjudication on the merits for purposes of § 2254(d).

An en banc decision in the Wilson case is still pending in the Court.

Just last week, on January 21, 2016, Jones moved this Court to stay his execution pending the resolution of Wilson by our en banc Court. That same day, he also moved this Court to recall the mandate in Jones III so that we could reevaluate his original habeas petition after Wilson is decided. The essence of his argument in both motions is that the Wilson decision is "likely to [] reverse the case law governing federal habeas review" that we applied in Jones III and that, under the "look through" approach that Jones anticipates we will adopt in Wilson, we would likely have found the ineffective-assistance-of-counsel claim in his original habeas petition meritorious.[2]

We address these two motions today.

## II.

## A.

The Supreme Court has recognized that the federal courts of appeals "have an inherent power to recall their mandates, subject to review for an abuse of

---

[2] The habeas petition that we addressed in Jones III contained a second claim relating to the prosecutor's alleged comments about Jones's failure to testify during closing arguments. See Jones III, 753 F.3d at 1194. However, that claim was denied on the merits in a written decision by the Georgia Supreme Court on direct appeal. See Jones II, 539 S.E.2d at 159-60. Jones does not argue that our review of that claim implicated the issues to be decided in Wilson.

discretion." Calderon v. Thompson, 523 U.S. 538, 549 (1998). However, "[i]n light of the profound interests in repose attaching to the mandate of a court of appeals," the Court has cautioned that "the power can be exercised only in extraordinary circumstances." Id. at 550 (quotation omitted). Indeed, recall of a mandate is a "last resort" that should be used only in the face of "grave, unforeseen contingencies." Id.

Our limited discretion to recall a mandate is further circumscribed in this case because Jones is ultimately seeking relief from a state court criminal judgment. Consequently, we are required to measure his motion "not only against standards of general application, but also against the statutory and jurisprudential limits applicable in habeas corpus cases." Id. at 553. The habeas petition that we denied in Jones III was filed after April 24, 1996, and thus is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(b), as amended by AEDPA, provides:

> **(1)** A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> **(2)** A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
>> **(A)** the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(B)(i)** the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

**(ii)** the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court has explained that a motion to recall a mandate denying habeas relief generally must be regarded as a second or successive habeas petition:

> In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply).

Calderon, 523 U.S. at 553.

"Under § 2244(b), the first step of analysis is to determine whether a 'claim presented in a second or successive habeas corpus application' was also 'presented in a prior application.' If so, the claim must be dismissed; if not, the analysis proceeds to whether the claim satisfies one of two narrow exceptions." Gonzalez v. Crosby, 545 U.S. 524, 530 (2005) (emphasis added). Jones's motion to recall is based on precisely the same claims we decided when we denied his original § 2254 petition; it does not raise any new claims not presented or fully adjudicated

10

in his first habeas application.  The Strickland claim that he asserted in his original habeas petition alleged that "the Georgia state courts unreasonably applied Strickland when they concluded that his trial counsel's investigation of mitigating evidence was not deficient and, second, that there was no reasonable probability that the additional mitigating evidence discovered by Jones's habeas counsel would have altered the outcome of his trial." Jones III, 753 F.3d at 1183-84.  In his motion to recall the mandate, Jones asks us to reconsider that Strickland claim by measuring it against the decision of the Georgia state superior court, instead of the Georgia Supreme Court's determination.  Quite simply, the claim is the same and is therefore barred by 28 U.S.C. § 2244(b)(1).

But even if Jones's ineffective assistance claim had not been presented in a previous application and this motion was governed by § 2244(b)(2) rather than § 2244(b)(1), we would still be compelled to dismiss it because it does not fall within either of that provision's narrow exceptions to dismissal for claims that: (i) rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," or (ii) rely on a "factual predicate [that] could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2).  His claim relies on the same Supreme Court case law governing ineffective assistance of counsel -- Strickland v. Washington, 466 U.S. 688 (1984) and its progeny -- and not on any new rule of constitutional law.  And he does not

11

rely on any new evidence that was not presented and considered in his original habeas petition.

Jones's motion to recall the mandate is effectively a second or successive habeas corpus petition; it does not satisfy any of the statutory exceptions to dismissal; and therefore it must be denied.

B.

The Supreme Court, however, has provided one other possible avenue by which a court of appeals can recall a mandate denying habeas relief. In cases "where a motion to recall the mandate is pending," a court may in very limited circumstances "recall[] the mandate by its own initiative." Calderon, 523 U.S. at 554. Accordingly, we still retain authority to recall the mandate sua sponte, "on the exclusive basis of [Jones's] first federal habeas petition." Id. However, we can only do so in very limited circumstances. "[W]here a federal court of appeals sua sponte recalls its mandate to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner, the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined by [the Supreme Court's] habeas corpus jurisprudence." Id. at 558.

Jones faces two insurmountable obstacles. First, were we to recall the mandate, we would not be acting sua sponte. Rather, we would be considering whether to recall our mandate denying Jones's habeas relief only because he filed a

12

motion asking us to do so.  Second, Jones has not demonstrated that a failure to recall the mandate in his case would result in a miscarriage of justice.  Because the ineffective assistance claim that Jones seeks to relitigate challenged his death sentence and not his underlying murder conviction, the "miscarriage of justice" exception requires him to show that he is "actually innocent of the death penalty to which he has been sentenced."  Sawyer v. Whitley, 505 U.S. 333, 349 (1992); see also Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1275 (11th Cir. 2004) (en banc) ("If . . . a court of appeals is considering recalling the mandate on its own motion, the literal terms of § 2244(b) do not apply, but the mandate cannot be recalled unless necessary to prevent a miscarriage of justice; that means the petitioner must be factually innocent of the crime, or of the sentence, as defined in the pre-AEDPA federal habeas jurisprudence.").  This narrow exception requires him to "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law."  Sawyer, 505 U.S. at 336 (emphasis added).  In deciding whether he has made that showing, we "must focus on those elements that render a defendant eligible for the death penalty [under the relevant state's law], and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."  Id. at 347.

13

Under Georgia's death penalty statute at the time of Jones's trial, which remains in effect today, a defendant who committed murder was not eligible for the death penalty unless the jury found at least one statutory aggravating factor proven beyond a reasonable doubt. See Ga. Code Ann. § 17-10-30(c) (1997). In Jones's second sentencing trial, the jury found two statutory aggravating factors: "Jones committed the offense of murder while engaged in the commission of armed robbery and burglary" and "the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture to the victim before death." Jones II, 539 S.E.2d at 157 (citing Ga. Code Ann. § 17-10-30(b)(2) & (7)). The Georgia Supreme Court found that these aggravating circumstances were adequately supported by the evidence relating to the manner in which the crime was committed. See id. at 158. The ineffective assistance claim in Jones's original petition alleged that his counsel "fail[ed] to discover mitigating background and mental health evidence." Jones III, 753 F.3d at 1173. This evidence "could have been helpful to his arguments at sentencing," as "evidence of Jones's psychiatric problems may have bolstered the argument that Solomon, not Jones, was the driving force behind the decision to rob the store" and "details regarding Jones's childhood with his abusive uncle and sexually abusive cousin and [placement] at a deplorable juvenile detention center may have supported the argument that Jones was not fully culpable for his actions, and may have cast him in a more

14

sympathetic light." Id. at 1185. This evidence, if credited, could have diminished Jones's moral culpability in the eyes of the jury. But it would have been irrelevant to the two aggravating circumstances found by the jury, which depended solely on the manner in which the murder was committed and were the "elements that render[ed Jones] eligible for the death penalty." Sawyer, 505 U.S. at 347.

Because Jones's claim involves only "additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error," id., he has not shown that a miscarriage of justice will result if we do not recall the mandate denying his habeas petition. To recall our mandate in these circumstances sua sponte would constitute a clear abuse of discretion. Calderon, 523 U.S. at 566.

Accordingly, we hold today that Jones cannot recall the mandate of this Court because he cannot satisfy the requirements found in 28 U.S.C. § 2244(b)(1) or (2), and, in any event, because he has not and cannot establish on this record any miscarriage of justice as required by controlling Supreme Court precedent.[3]

---

[3] Our concurring colleague suggests that this discussion about AEDPA and the controlling law found in Calderon is dicta. We view the application of AEDPA and this Supreme Court precedent as being essential to our holding in this case. Indeed, we do not believe we could address the merits of his petition without first deciding whether it fit within any of the exceptions to 28 U.S.C. § 2244(b). See 28 U.S.C. § 2244(b)(3)(C) ("The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of [§ 2244(b)]." (emphasis added)).

C.

Jones makes almost no mention of AEDPA or Calderon, instead arguing that the controlling standard for recalling the mandate in his case comes from our local rules.    Eleventh Circuit Rule 41-1 is the general rule governing the recall of a mandate in civil and criminal cases alike, and provides that "[a] mandate once issued shall not be recalled except to prevent injustice."  11th Cir. R. 41-1(b).  In Scott v. Singletary, 38 F.3d 1547, 1551 (11th Cir. 1994) -- which we decided prior to the enactment of AEDPA and the Supreme Court's decision in Calderon -- we held that we could recall a mandate to prevent injustice in a habeas case "if there has been a supervening change in the law" that "seriously undermine[d] the correctness of [our] prior judgment."  Judge Anderson, joined in relevant part by Judge Dubina, specially concurred in Scott, explaining that Rule 41-1(b) imposes a "high standard" that must be met to recall a mandate, requiring the petitioner to show a "clear constitutional error" that prejudiced him.  Id. at 1557-59 (Anderson, J., concurring specially).

The Rule 41-1(b) "injustice" standard that we explicated in Scott no longer provides an independent basis to recall the mandate in habeas cases.  The Supreme Court has instructed us that a distinct standard governs the decision to recall a mandate denying habeas relief.  See Calderon, 523 U.S. at 553 ("Thompson's is not an ordinary case, however, because he seeks relief from a criminal judgment

16

entered in state court.  To decide whether the Court of Appeals' order recalling the mandate was proper in these circumstances, we measure it <u>not only against standards of general application</u>, but also against the statutory and jurisprudential limits applicable in habeas corpus cases." (emphasis added)).  Such a motion must fall within an exception to dismissal contained in 28 U.S.C. § 2244(b).  In addition, we may recall the mandate on our own initiative to prevent "a miscarriage of justice as defined by [the Supreme Court's] habeas corpus jurisprudence." <u>Calderon</u>, 523 U.S. at 558.  Unlike the "injustice" standard we described in <u>Scott</u> and on which Jones exclusively relies, a "miscarriage of justice" in the habeas context depends not on a subsequent change in the law, but rather on the discovery of "new evidence of innocence." <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995).  The general "injustice" standard embodied in our local rule is different from and less demanding than the standard subsequently adopted by the Supreme Court, and, therefore, no longer provides an independent ground to recall a mandate in a habeas case.

But even if Rule 41-1(b)'s "injustice" standard governed our decision in this case, we would still decline to recall the mandate because no "injustice" will result if our original denial of habeas relief stands.  There has been no supervening change in the law in this case.  Jones predicts that this Court will change the rules governing federal habeas review in <u>Wilson</u> and adopt the rule he favors, but he is

17

only guessing. Without an actual change in the law, no injustice results from leaving a prior decision undisturbed.

Furthermore, and tellingly, whether or not this Court rules in Wilson that we look through the Georgia Supreme Court's summary denial of a Certificate of Probable Cause ("CPC") and evaluate the Georgia state superior court's habeas denial as the state's final "adjudication on the merits" under § 2254(d), the result will be exactly the same in this case. The procedural anomaly here is that we have already fully evaluated Jones's Strickland claim both ways, the first time actually by "looking through" to the state trial court's habeas determination, see March 20, 2014 Opinion at 21 n.4, and then a second time in an amended opinion measuring his claim against the determination of the Georgia Supreme Court, Jones III, 753 F.3d at 1182. In each instance, we determined that Jones had not met his burden under AEDPA. Neither the state trial court's habeas determination, nor the Georgia Supreme Court's denial of a CPC were contrary to or amounted to an unreasonable application of Strickland. In short, this Court has already performed precisely the same analysis Jones now asks for by seeking a recall of the mandate - - a review of his Strickland claim when measured against the state trial court's determination.

This Court in both its March 2014 opinion and in the amended April 2014 decision engaged in an extensive and identical analysis of the facts adduced at the

18

state habeas evidentiary hearing relating to the mitigating evidence Jones claimed his trial counsel should have presented to the jury at his sentencing hearing. The only change was the state court opinion that we considered as the "final adjudication on the merits" under 28 U.S.C. § 2254(d).

This Court specifically weighed the totality of the aggravating evidence against the totality of the mitigating evidence, the new and the old, the good and the bad, and we concluded that Jones had failed to establish that he was entitled to habeas relief. In our March 2014 opinion, we ultimately concluded that the "state [trial] court's determination that Jones did not raise a reasonable probability of a different result is not contrary to or an unreasonable application of Strickland." March 20, 2014 Opinion at 29. We reached precisely the same conclusion on precisely the same evidential foundation when we measured the evidence and the commands of AEDPA against the Georgia Supreme Court's determination. See Jones III, 753 F.3d at 1185.

Nevertheless, Jones insists that, if we analyze the state habeas court's decision under the "look through" approach, we would find his ineffective assistance claim meritorious. He offers two reasons why, in his view, the Georgia superior court contravened federal law when it found that, had counsel presented mitigating evidence based on the leads that the defense investigator collected in the Stapert file, the state would have introduced additional aggravating evidence culled

from the same file. But in both the March and April opinions, we rejected each of those arguments, as well as others in the same vein. See March 20, 2014 Opinion at 43 ("Jones advances several reasons why some of the aggravating evidence developed in the habeas proceeding would not be admissible at a new sentencing trial. We remain unpersuaded."); see also Jones III, 753 F.3d at 1190-91 (same).

First, he argues that any information drawn from the Stapert file would have been privileged and undiscoverable by the State. We squarely rejected this claim in both opinions, explaining that it presented a question of state law and "state courts are the ultimate expositors of state law." March 20, 2014 Opinion at 43; see also Jones III, 753 F.3d at 1191 (same). Furthermore, we found that in a sentencing retrial the Stapert file would be available for use by the state because, "by bringing this habeas action first in state court, and then again in federal district court, Jones has waived any current or future privilege or work-product protection over the Stapert file." March 20, 2014 Opinion at 43-44; see also Jones III, 753 F.3d at 1191 (same). Second, Jones contends that much of the aggravating evidence relied on by the state habeas court was "rank and inadmissible hearsay." But we also directly confronted and rejected this argument in both the March and April opinions, explaining that "we cannot find unreasonable the state court's determination that the contents of the Stapert file w[ere] admissible hearsay." March 20, 2014 Opinion at 45; Jones III, 753 F.3d at 1192 (same)

20

The "injustice" standard that generally governs our decision whether to recall a mandate does not apply to habeas review of state criminal convictions. But, even if it did, we have already considered Jones's ineffective assistance claim by "looking through" the Georgia Supreme Court's CPC denial to the state superior court's reasoned opinion and have found it unmeritorious. Thus, regardless of how Wilson is decided, Jones cannot show that any injustice could result if we do not re-evaluate his ineffective assistance claim after Wilson is decided.

D.

Finally, even if Jones could surmount these huge hurdles, on this record we would still be loath to now recall our 2014 mandate denying habeas relief because to do so would unjustifiably subvert Georgia's interest in the finality of its criminal judgments. Jones insists that the pending en banc decision in Wilson provides a sufficient justification to reopen his case. But we are aware of no case -- and Jones has cited none -- where we recalled a mandate because we subsequently granted en banc consideration of a different matter in a different case.

Recalling a mandate based on speculation about how we might resolve a subsequent en banc case is especially inappropriate in the habeas context, where federal courts must respect the state's interest in "the finality of convictions that have survived direct review within the state court system." Brecht v. Abrahamson,

21

507 U.S. 619, 635 (1993). These interests are particularly "compelling when a federal court of appeals issues a mandate denying federal habeas relief." Calderon, 523 U.S. at 556. The Supreme Court has explained the rationale this way:

> When lengthy federal proceedings have run their course and a mandate denying relief has issued, finality acquires an added moral dimension. Only with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out. To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike.

Id. (citations and quotations omitted).

Indeed, "[n]o one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation." Teague v. Lane, 489 U.S. 288, 309 (plurality op.) (quoting Mackey v. United States, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). In a case such as this one, where a court of appeals is asked to "recall[] its mandate to revisit the merits of its earlier decision denying habeas relief," "the State's interests in finality are all but paramount." Calderon, 523 U.S. at 557. If our decision to rehear a different case involving a related question en banc provided a basis to recall our mandate denying habeas relief, our decisions would amount to interlocutory orders subject to constant reconsideration.

Moreover, the legal change that Jones anticipates we will adopt in Wilson is simply not the type of new legal rule that would entitle him to relitigate his original habeas petition. The questions being considered in Wilson involve which state court decisions federal habeas courts ought to review under 28 U.S.C. § 2254(d), and have no bearing on the legal standards that state courts must apply in examining a Strickland claim. The purpose of federal habeas review is to encourage state "trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards." Teague, 289 U.S. at 306 (plurality op.) (quoting Desist v. United States, 394 U.S. 244, 262-63 (1969) (Harlan, J., dissenting)). In light of this purpose, the Supreme Court has held that, within very narrow exceptions, "the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place" in order "to force the trial and appellate courts to toe the constitutional mark." Id. at 306-07 (quotations and alterations omitted). Justice O'Connor, writing for a plurality in Teague v. Lane, concluded that habeas review does not exist just to serve some "perceived need to assure that an individual accused of a crime is afforded a trial free of constitutional error," id. at 308 (quoting Kuhlmann v. Wilson, 477 U.S. 436, 447 (1986) (plurality op.)); instead, weighty "interests of comity and finality" persuaded the Court that new rules

governing criminal prosecutions generally should not be applied retroactively on collateral review to cases that are already final, id.

The same interests of federalism, comity, and finality that guided the Supreme Court's decision in Teague apply here but with even more compelling force. To undo and reconsider our settled decisions denying habeas relief based on a new rule governing which state court decision federal habeas courts review would do nothing to further the goals of habeas review, and would eviscerate "the principle of finality which is essential to the operation of our criminal justice system." Id. at 309.

In short, recalling our mandate denying habeas relief at this late stage -- thirty-six years after the murder and first death sentence was imposed, nineteen years after the second death sentence was imposed and fifteen years after it became final, seven years after Jones filed his current federal habeas petition, and thirteen months after we declined to rehear his case and issued our mandate denying habeas relief -- would "inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." Calderon, 523 U.S. at 556 (internal citation and quotation omitted). These interests too counsel against recalling our mandate.

24

III.

Jones has also moved this Court to stay his execution so that we may reconsider our denial of the ineffective-assistance-of-counsel claim asserted in his original habeas petition after Wilson is decided.  It is by now clear that we may grant a stay of execution only if Jones establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." See Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011) (emphasis added). Because Jones cannot show a substantial likelihood of success on the merits, we deny his motion for stay.

For the reasons we have explained at some length, we cannot, on this record and in this procedural posture, recall our earlier mandate denying Jones's habeas petition.  And without recalling our mandate, there is no procedural vehicle by which we could reevaluate Jones's previously denied habeas claims.  Were he to file a new habeas petition under 28 U.S.C. § 2254, again seeking to raise the ineffective-assistance-of-counsel claim that we have already denied, it would have to be dismissed.  See 28 U.S.C. § 2244(b)(1).  For that reason alone, Jones has not shown a substantial likelihood that he will succeed on the merits of his ineffective assistance claim.

25

But even if we could lawfully recall the mandate, await the resolution of Wilson en banc, and Wilson were to require the "look through" approach under 28 U.S.C. § 2254(d), Jones still could not succeed on the merits of his claim. We repeat: in the unique circumstances of this case, we have already seen the flip side of the Wilson coin. In our now-withdrawn March 20, 2014 opinion, we employed precisely the mode of analysis that Jones argues we should use and we rejected his ineffective assistance claim. He has offered no new arguments to reconsider the soundness of that decision even if we were able to examine it still again. Quite simply, because we have already rejected his ineffective assistance claim whether measured against the trial court's ruling or based only on an analysis of the Georgia Supreme Court's Certificate of Probable Cause determination, Jones cannot show a substantial likelihood of success on the merits.

IV.

In sum, we conclude that to recall our mandate denying Jones's habeas petition would amount to an abuse of discretion; that, even if we could recall the mandate we would not because no "injustice," let alone a "miscarriage of justice," will result from allowing our prior decision to rest undisturbed; and that disturbing the finality of our decision denying habeas relief in this case would be inappropriate in light of Georgia's powerful interest in the finality of its criminal judgments. For the same reasons, we also conclude that Jones has failed to

26

establish a substantial likelihood that he will succeed on the merits of his ineffective-assistance-of-counsel claim.   Accordingly, we deny both his motion to recall the mandate and his corollary application to stay execution.

**MOTION TO RECALL MANDATE AND MOTION FOR STAY OF EXECUTION DENIED.**

WILSON, Circuit Judge, concurring:

As stated by the Majority, "[t]he essence" of Jones's argument in both of his motions is that our pending en banc decision in Wilson v. Warden, Georgia Diagnostic Prison[1] will "reverse the case law governing federal habeas review that we applied" to his Strickland claim and that, "under the 'look through' approach that Jones anticipates we will adopt in Wilson, we would likely have found" his Strickland claim meritorious. Maj. Op. at 8 (internal quotation marks omitted). In other words, Jones's requests for relief are based solely on his contention that his Strickland claim would prevail under the "look through" approach. Accordingly, as the Majority itself acknowledges, its finding that Jones's Strickland claim would clearly fail under that approach is dispositive. See Maj. Op. at 20, 25–26. I agree with the Majority on this point—we must deny Jones's motions because, even if we applied the "look through" approach, his Strickland claim would not succeed. Since this issue is dispositive, the Majority's discussion beyond its "look through" determination is "not necessary to decid[e]" Jones's case, making it dicta. See United States v. Eggersdorf, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997). Although such discussion is extraneous, I do not agree with the reasoning therein and, therefore, concur only in the result.

---

[1] 774 F.3d 671 (11th Cir. 2014), reh'g en banc granted, opinion vacated (July 30, 2015).

1